RKNOLL, Justice.
At issue in this case is the ability of the City of Baton Rouge to amend its Plan of Government to increase the maximum penalty for the violation of a city ordinance after the Louisiana Constitution of 1974.
On June 17, 1995, Lonnie Blakely was arrested and charged with misdemeanor theft, a violation of Title 13:67 of the Code of Ordinances of the City of Baton Rouge, which carried a maximum penalty of six months in prison, a five hundred dollar fine, or both. Blakely filed a motion to quash, alleging that the penalty provision of 13:67 was unconstitutional in that it exceeded the maximum provided under Act 169 of 1898, the original charter of the City of Baton Rouge, as well as the Plan of Government, enacted in 1948. Blakely also alleged that á 1979 amendment to the Plan of Government, increasing the maximum penalty allowed for city ordinances, violated Art. VI, § 4 of the Louisiana Constitution of 1974.
After a hearing before Judge Donald Johnson in Baton Rouge City Court, Blakely’s motion to quash was granted in part. The trial court found that the maximum penalty allowable under the Plan of Government, as enacted in 1948, was a fine of two hundred dollars, imprisonment for sixty days, or both. The trial court found that the 1979 amendment to the Plan of Government, increasing the maximum penalty for a violation of an ordinance to “the maximum penalties allowable under the laws of the State of Louisiana for offenses which fall within the jurisdiction of the Baton Rouge City Court,” was unconstitutional under Art. VI, § 4 of the Louisiana Constitution of 1974. The trial court amended the ordinance to provide a penalty not to exceed a fine of two hundred dollars, imprisonment for sixty days, or both.
The City of Baton Rouge appeals, invoking this court’s direct appellate jurisdiction under Art. V, § 5(D) of the Louisiana Constitution of 1974. The city asserts that the trial court erred in finding the penalty provision unconstitutional and ^further erred in amending the statute by reducing its penalty provision. The city argues that the 1974 Constitution struck a different balance of power between the State and the home rule governments than that which existed under previous constitutions, and that its amendment of its own charter, increasing the maximum penalty, was constitutional. The city *1054 argues that, as a home rule government that existed prior to the enactment of the 1974 Constitution, the only limitations on its power to enact and enforce ordinances are found in the Louisiana Constitution of 1974 and in the Baton Rouge Plan of Government itself.
AMENDMENT TO SECTION 3.03
The original version of Section 3.03 of the Plan of Government for the City of Baton Rouge, adopted in 1948, provided that the penalties for the violation of any regulation shall not exceed a fíne of two hundred dollars, imprisonment for sixty days, or both. In 1951, the City Council for the City of Baton Rouge enacted Ordinance 13:67, misdemeanor theft, providing a maximum penalty of a five hundred dollar fine, imprisonment for not more than six months, or both. We note that at the time 13:67 was enacted, its penalty exceeded the maximum provided by the City’s own Plan of Government, Section 3.03.
However, on October 27, 1979, the City of Baton Rouge amended Section 3.03 of the plan of Government to remove the restriction on the penalty provisions of its municipal ordinances. Section 3.03 now provides that the Council shall have the power to provide penalties for the violation of any ordinance “which shall not exceed the maximum penalties allowable under the laws of the State of Louisiana for offenses which fall within the jurisdiction of the Baton Rouge City Court.”
The jurisdiction of a city court is limited to misdemeanor offenses in that it cannot constitutionally sentence a defendant to a term of imprisonment of more than |4six months without hard labor, or a fine of more than one thousand dollars. La.R.S. 13:1895; La. Code Crim.P. art. 779; City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445. The amendment to Section 3.03 effectively extended the maximum penalty for the violation of Baton Rouge ordinance from sixty days and two hundred dollars to six months and one thousand dollars, the jurisdictional limit for a city court.. This extension resolved the inconsistency 13:67 had with Section 3.03.
Defendant argues that the 1979 amendment to Section 3.03 was unconstitutional, in that Baton Rouge extended its own powers and functions in violation of the mandate in La. Const. Art. VT, § 4 that “each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted.” Defendant argues that Art. VI, § 4 effectively “locked in” the powers delegated to municipalities at the moment the 1974 Constitution became effective. Defendant argues that as a result, any increase in the City of Baton Rouge’s power of enforcement would require an additional constitutional amendment.
BACKGROUND
The City of Baton Rouge was originally incorporated by the legislature in Act 169 of 1898. This act delineated the territorial boundaries of the city, provided for the existence and operation of the various offices of city government, and further delegated the power to enact laws and ordinances to the city council. As a “creature of the legislature,” the city derived all of its limited power and organizational structure from its legislative charter. Since the charter was simply a legislative enactment, the legislature could modify, amend, and withdraw the city’s grant of authority, and reorganize the structure of the city’s government. The legislature originally limited the city’s power to punish violations of its ordinances to fines of [ sfifty dollars and imprisonment not to exceed twenty days. By Act 102 of 1934, the legislature amended Act 169 of 1898 and increased the maximum penalty for a violation of a Baton Rouge Ordinance to fines of two hundred dollars and imprisonment not to exceed sixty days.
In 1946, the Louisiana Constitution of 1921 was amended by the addition of Art. XIV, § 3(a), which provided that the people of Baton Rouge shall have the power to establish government for the parish and the municipal corporations situated in the parish. This provision called for the establishment of a city-parish charter commission whose duty it was to file a plan of government for East Baton Rouge Parish. Art. XIV, § 3(a) fur *1055 ther provided that the plan of government would be:
[s]ubjeet to the constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish.”
Pursuant to Art. XIV, § 3(a), the Plan of Government for the city-parish was adopted August 12, 1948, and became effective on January 1,1949. The constitutional changes, along with the adoption of the Plan of Government, marked a subtle shift in the relationship between the City of Baton Rouge and the State. Prior to 1946, the city charter could be amended in any way or repealed at any time by the state legislature, depriving the city of all meaningful autonomy. The addition of Art. XIV, § 3(a) to the 1921 Constitution insulated the city from general laws enacted by the legislature, at least with respect to its structure, organization, and distribution of its delegated powers. See La Fleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1 Cir.1960); Letellier v. Jefferson Parish, 254 La. 1067, 229 So.2d 101 (1969). Nevertheless, because the Plan of Government was “subject to the constitution and laws ” of the State, with respect to the powers and functions to the City of Baton IsRouge, the ultimate authority over city affairs remained in the legislature. See City of Baton Rouge v. Mahnken, 260 La. 1002, 257 So.2d 690 (1972). In Ware v. Cannon, 248 So.2d 19 (La.App. 1 Cir.); writ denied, 259 La. 754, 252 So.2d 453 (1971), the court addressed this issue, stating:
We interpret Article XIV, Section 3(a) to mean that the Plan can neither augment nor limit these powers and functions. It can transfer them from one unit of government to another, or redistribute them among the units, but it cannot destroy or limit the power, nor can it confer it on one not previously entitled by law to the exercise thereof.
Ware, supra, at 23.
Therefore, the State asserted legislative supremacy regardless of whether a matter was a statewide concern or a purely local one. The legislature had the right and authority not only to délegate local governmental powers, but also to withdraw them and impose its will on parish and municipal local governments regardless of their local needs or their capacity to comply with the legislature’s mandates. See generally, State v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949).
' Home rule advocates were dissatisfied with the legislature’s continuing authority over municipalities under the 1921 Constitution, and the issue of greater autonomy for home rule municipalities was the subject of lengthy and spirited debate among the delegates of the 1973 Constitutional Convention.[1] In the end, the exponents of greater autonomy for the home rule municipalities prevailéd, and the 1974 Constitution granted the municipalities broad powers and immunity from control by the legislature. Art. VI, § 4 of the 1974 Louisiana Constitution provides:
Every home rule charter or plan of government existing or ^adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
DISCUSSION
We note that prior to the 1974 Constitution, under the rule laid down in Ware v. Cannon, supra, Baton Rouge would not have had the ability to unilaterally increase its power of enforcement. However, the 1974 *1056 Constitution marked fundamental changes in the ability of existing home rule charters to initiate regulation. In City of New Orleans v. Board of Com’rs, 93-0690 (La.7/5/94), 640 So.2d 237, this court addressed the ability of the City of New Orleans, which like Baton Rouge is also a home rule municipality, to initiate legislation under the 1974 Constitution:
There are three primary, interrelated sources of the CNO’s power to initiate legislation and regulation: Article VI, § 4 of the 1974 state constitution; the preexisting city home rule charter; and any amendments to the charter, subsequent to the adoption of the constitution, made pursuant to methods provided by the charter. Article VI, § 4 constitutionally maintains the preexisting CNO charter in effect, including the powers, functions, and duties provided for by that charter, except as inconsistent with the 1974 constitution. Section 4 further provides that subsequent to the adoption of the 1974 constitution the CNO charter may be amended, modified, or repealed pursuant to the methods set forth in the charter. In effect, Section I constitutionalizes the CNO chaHer, as amended by the local electorate according to methods provided by the charter, except insofar as the governmental powers, functions, and duties provided by the chaHer are inconsistent with provisions of the 1971 constitution.
Article VI, § 4 provides an additional or secondary source of initiative power for a preexisting home rule municipality,, viz., that, if the city’s charter permits, the municipality shall have the right to powers and functions granted to other local governmental subdivisions.
* Hi * * * *
The text of Section I of Article VI plainly indicates that the drafters and ratifiers intended to emancipate and continue in Is effect the preexisting home rule chaHers free of the conditions and restraints that had been placed upon them by the 1921 Constitution. Section 4 grants every preexisting home rule government, with respect to the constitutional exercise of its power of initiation, the power of immunity from the control of the legislature. Because Section 4 constitutionally maintains in effect each preexisting home rule charter and the powers, functions, and duties provided for by that charter, except as inconsistent with the 1974 Constitution, the legislature may not control, restrain, or override a preexisting home rule government’s valid exercise of the power to initiate legislation that is consistent with the constitution. Accordingly, tmless a legislative act by a preexisting home rule government exceeds some limit placed upon its power of initiation by the 197I Constitution, that government’s power of immunity prevents the legislature from reversing, withdrawing, or denying an exercise by that city or parish of its power to enact and enforce that local law.
This meaning of Section 4 is confirmed by an examination of the context in which it occurs and the text of the local government article as a whole. Significantly, there is nothing in Section 4 that authorizes the legislature to deny by general law the exercise of a power by a preexisting home rule city or parish. Moreover, nothing in Section I limits the scope of the chaHer powers of a preexisting home rule city or parish, except the proviso that requires such powers to be exercised in conformity with the 1971 Constitution.
City of New Orleans v. Board of Com’rs, supra, at 244-246. (Emphasis added.)
The powers and functions of the home rule municipalities flowed directly from the 1974 Constitution; they were no longer meted out or limited by the legislature. As noted above, the 1974 Constitution liberated home rule municipalities from state legislative control, and it did not limit the ability of the municipalities to increase their powers by amending their charters, so long as the amendments were not inconsistent with the 1974 Constitution. This court recognized the probability that a home rule municipality would increase its own powers by amending its charter, stating:
Additionally, Section 4 grants to all preexisting home rule cities and parishes the power to amend their charters by the methods provided for in each charter.
*1057 This provision indicates that those local governments may add powers and delete limitations upon 19their powers, except as inconsistent with the 197k Constitution. These grants of autonomous amendment powers clearly show that the framers of the 1974 Constitution and the people who voted for it did not intend for the preexisting home rule governments to be shackled by the 1921 Constitutional limitations and reservations that tended to give the legislature control over them.
City of New Orleans v. Board of Com’rs, supra, at 248.
The 1974 Constitution itself provides only two specific limitations on the powers of a municipality under a home rule charter. City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445. Art. VI, § 9 provides:
(A) Limitations. No local governmental subdivision shall (1) define and provide for the punishment of a felony; or (2) except as provided by law, enact an ordinance governing private or civil relationships.
(B) Police Power Not Abridged. Notwithstanding any provision of this Article, the police power of the state shall never be abridged.
Since the criminal jurisdiction of city courts is confined to misdemeanors by La. R.S. 13:1894, the amendment to Section 3.03 of the Plan of Government does not provide for the punishment of a felony. Furthermore, defendant does not show that the amendment to Section 3.03 abridges the State’s police power by conflicting with an act of the state legislature necessary to protect the vital interest of the State as a whole. City of New Orleans v. Board of Com’rs, supra, at 251.
The amendment to Section 3.03 does not exceed the city’s own grant of authority in its Plan of Government, and the Plan of Government provides for its own amendment. Sections 3.01 and 1.02 of the Plan of Government grant to the municipal council all powers and duties:
not inconsistent with the provisions of this plan of government, heretofore possessed by East Baton Rouge Parish or the governing body thereof, or which hereafter be conferred or imposed on parishes or the governing bodies thereof by the constitution and laws of the state and, in addition, such .other powers and duties as are specifically conferred or imposed onJ^East Baton Rouge Parish by this plan of government.
Plan of Government for the Parish of East Baton Rouge and the City of Baton Rouge, Section 1.02.
Section 3.02, providing for the powers and duties of the City of Baton Rouge, states:
The City of Baton Rouge as extended by this Plan of Government shall continue to have all the powers and duties, except as provided in this Plan of Government, heretofore possessed by the City of Baton Rouge under its Charter and the general laws of the State, and such other powers and duties not inconsistent with this Plan of Government as hereafter may be conferred or imposed on municipalities of the same population class. All provisions of the Charter of the City of Baton Rouge not in conflict with the provisions of this Plan of Government are expressly continued in force and effect and henceforth, shall be subject to amendment only to the same extent and in the same manner as hereinafter provided for the amendment of this Plan of Government. All ordinances of the City of Baton Rouge in force prior to the first day of January 1949 shall, insofar as they are not inconsistent with the Plan of Government, remain in force and effect until amended or repealed by the Council.
These grants of power are broadly worded, and reveal no intent to limit the authority of the municipal council in any way. The amendment to Section 3.03 in 1979 comports with the general grant of. authority found within the Plan of Government.. Furthermore, Section. 11.09.specifically provides for the amendment of the Plan of Government by a majority vote in favor of the amendment when submitted to the qualified voters of the parish. Defendant has not alleged any violations of the amendment provision of the Plan of Government that would invalidate the amendment to Section 3.03.
*1058 CONCLUSION
The 1979 Amendment to Section 3.03 of the Plan of Government has not been shown to be in violation of the grant of power of Art. VI, § 4 of the 1974 Constitution. Nor does it violate other provisions of the Plan of Government. Accordingly, for the foregoing reasons, the judgment of the city court for the City of Baton Rouge, finding Inthe amendment unconstitutional, is reversed. This case is remanded to the city court for further proceedings consistent with this opinion and the views expressed herein.
REVERSED AND REMANDED.
TRAYLOR, J., not on panel. Rule IV, Part 2, Sec.3.

. See the excellent discussion of the historical context for the adoption of the home rule provisions of the 1974 Constitution in Lafourche Parish Council v. Autin, 94-0985 (La. 12/9/94), 648 So.2d 343; and City of New Orleans v. Board of Com'rs, 93-0690 (La.7/5/94), 640 So.2d 237.