701 So.2d 130 (1997)
LOUISIANA ASSOCIATED GENERAL CONTRACTORS, INC.
v.
NEW ORLEANS AVIATION BOARD.
No. 97-CA-0752.
Supreme Court of Louisiana.
October 31, 1997.
Rebecca J. King, Middleberg, Riddle and Gianna, Terry E. Albritton, Alvin L. Moon, L. Marlene Quarles, M. David Gelfand, Wendy Brown-Scott, Martha Jean Kegel, New Orleans, for applicant.
W.P. Wray, Jr., Christopher P. Pierce, Charles W. Roberts, Baton Rouge, for respondent.
KIMBALL, Justice.[*]
The trial court declared La. R.S. 38:2233.2 unconstitutional and defendants lodged a direct appeal in this court pursuant to La. Const. Art. V, Sec. 5(D). Finding the trial court prematurely ruled on constitutional issues, we vacate its judgment and remand the case to the trial court for further proceedings in accordance with this opinion.

FACTS AND PROCEDURAL HISTORY
The New Orleans Aviation Board ("NOAB"), a municipal board of the City of New Orleans, adopted a program entitled "Disadvantaged Business Enterprise Plan for the New Orleans International Airport" ("Program") which, by its own terms, established "participation goals, preferences, and set asides on airport and heliport related contracts and procurements for firms owned by socially and economically disadvantaged persons." Under the Program, the NOAB requires that the prime contractor hired to perform under a public construction contract make every reasonable effort to award at least twenty-five percent of the total contract dollars in subcontracts to firms owned and controlled by socially and economically disadvantaged persons. The Program, which states it was developed pursuant to 49 C.F.R. Part 23, Subpart D, and in conjunction with the City of New Orleans' "Interim Disadvantaged *131 Small Business Development Ordinance,"[1] establishes a rebuttable presumption that individuals in the following groups are "socially and economically disadvantaged:
(a) Women;
(b) African Americans, which includes persons having origins in any of the Black racial groups of Africa;
(c) Hispanic Americans, which includes persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish or Portuguese culture or origin, regardless of race;
(d) Native Americans, which includes persons who are American Indians, Eskimos, Aleuts, or Native Hawaiians;
(e) Asian-Pacific Americans, which includes persons whose origins are from Japan, China, Taiwan, Korea, Vietnam, Laos, Cambodia, the Philippines, Samoa, Guam, the U.S. Trust Territories of the Pacific, and the Northern Marianas; and
(f) Asian-Indian Americans, which includes persons whose origins are from India, Pakistan, and Bangladesh."
The NOAB will certify a business as a disadvantaged business enterprise ("DBE") if it is at least fifty-one percent owned and controlled by persons who are socially and economically disadvantaged. The NOAB assumes that business owners who are members of one of the groups listed above are socially and economically disadvantaged and generally will not investigate their actual disadvantaged status unless it is challenged by a third party. If challenged by a third party, a business owned by a member of one of the above groups can lose its disadvantaged status if, for example, it is proved disadvantaged owners do not have control of the day-to-day operations of the business.
An individual who is not a member of one of the groups listed above can apply for DBE certification on a case-by-case basis. The NOAB will determine whether that individual is in fact socially and economically disadvantaged by applying certain criteria and ascertaining whether the individual demonstrated that his disadvantaged status arose from individual circumstances, rather than by virtue of membership in a group.[2]
For its Project No. 45-93-01W, entitled "West Taxi Lot Lounge and Staging Facility at the New Orleans International Airport" ("Project"), the NOAB, pursuant to its Program, set a fifty percent DBE participation goal wherein the prime contractor selected for the Project was required to make good faith efforts to award at least fifty percent of the total contract dollars in subcontracts to firms owned and controlled by socially and *132 economically disadvantaged persons. To demonstrate good faith efforts, a contractor was required to document the steps taken to seek out and consider DBEs as potential subcontractors and these steps must have included certain enumerated actions such as contacting two or more DBEs as potential subcontractors and affirmatively soliciting their interest, capability and price quotations. A contractor who failed to comply with the Program requirements, even if he submitted the lowest bid, would be deemed a non-responsive bidder by the NOAB.
On April 12, 1996, the Louisiana Associated General Contractors ("LAGC") filed a "Petition for Declaratory and Injunctive Relief" against the NOAB alleging, inter alia, that the NOAB implemented and enforced its Program under the authority of La. R.S. 38:2233.2 ("the statute") which provides that political subdivisions are authorized to designate and set aside a percentage of the value of construction contracts for award to minority businesses and to adopt a requirement that the prime contractor award a percentage of the total dollar bid to minority subcontractors. In its suit, the LAGC sought: (1) to enjoin any further enforcement of La. R.S. 38:2233.2, the Program, and any other statute or policy which provides for race-based or gender-based set asides or subcontract participation requirements and (2) to have La. R.S. 38:2233.2, the Program, and the fifty percent minority subcontract participation requirement declared unconstitutional as they discriminate on the basis of race in violation of La. Const. Art. I, Sec. 3.[3]
On September 30, 1996, plaintiff moved for summary judgment. The trial court granted plaintiff's motion, and, relying on Louisiana Associated General Contractors, Inc. v. State, 95-2105 (La.3/8/96), 669 So.2d 1185,[4] declared La. R.S. 38:2233.2 and the defendant's Program as applied to non-federal public works projects[5] unconstitutional as violative of La. Const. Art. I, Sec. 3. Additionally, the trial court permanently enjoined the NOAB and anyone acting in concert with it or at its direction from enforcing or utilizing the statute or the Program in non-federal public works projects.
Pursuant to La. Const. Art. V, Sec. 5(D), which provides that a case shall be appealable to the supreme court when a law or ordinance has been declared unconstitutional, defendants appealed to this court.

DISCUSSION
A court should not reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case. Cameron Parish School Bd. v. ACandS, Inc., 96-0895 p. 5 (La.1/14/97), 687 So.2d 84, 87. "No rule of practice is better settled than never to anticipate a question of constitutional law in advance of the necessity of deciding it." Matherne v. Gray Ins. Co., 95-0975 p. 3 (La.10/16/95), 661 So.2d 432, 434. Hence, courts should avoid constitutional rulings when the case can be disposed of on the basis of nonconstitutional issues. Blanchard v. State, 96-0053 p. 2 (La.5/21/96), 673 So.2d 1000, 1002.
The LAGC alleges that if La. R.S. 38:2233.2 is not the authority for the NOAB's Program, then the NOAB has no authority to create and implement the Program. In response, the NOAB argues that the Program itself states it was created pursuant to 49 *133 C.F.R. Part 23, Subpart D and the City of New Orleans' "Interim Disadvantaged Small Business Development Ordinance," therefore the issue of the statute's constitutionality is irrelevant for purposes of this case. The NOAB also relies on the city's broad home rule powers as a basis of authority for the Program.[6] Because the Program indicates on its face that it was enacted pursuant to federal law and this ordinance, the trial court should have first considered this issue. There is no indication in the record that the trial court considered whether the Program was validly enacted pursuant to local law. The trial court should have first determined whether the NOAB has authority to implement its Program under the ordinance and the Home Rule Charter. The resolution of this issue could have obviated the necessity of reaching the constitutionality of La. R.S. 38:2233.2 and the Program. Since a finding that the NOAB was without authority under the ordinance and the Home Rule Charter to adopt this Program would have allowed the trial court to dispose of this case without reaching the constitutionality of the statute, we find it necessary to remand the case to the trial court for it to consider this issue.
Therefore, because the trial court reached the constitutionality of La. R.S. 38:2233.2 and the Program prematurely, we vacate the summary judgment granted below and remand the case to the trial court for further proceedings in accordance with this opinion.
VACATED AND REMANDED.
JOHNSON, J., concurs.
NOTES
[*] VICTORY, J., not on panel. See Rule IV, Part 2, Section 3.
[1] The City of New Orleans' "Interim Disadvantaged Small Business Development Ordinance" states that on any publicly bid public works and/or construction project whose value exceeds $50,000 to which the city is a party, the prime contractor shall be required to make every reasonable effort to award 25 percent of the amount to be subcontracted to firms owned and controlled by socially and economically disadvantaged persons who have a place of business or are licensed to do business in the city. The Ordinance states that individuals claiming social disadvantage must establish their social disadvantage on the basis of clear and convincing evidence which must include certain enumerated elements. Those claiming economic disadvantage must be socially disadvantaged and must prove their ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities based on certain enumerated factors. The Ordinance specifically states in § 46-50(a):

No person shall be certified for inclusion or included in the registry of firms owned and controlled by socially and economically disadvantaged persons, and no contracts shall be set aside for award, nor shall any person be awarded any city contract or subcontract or preference in contracting, subcontracting or vending to or with the city on the basis of race, color, creed, national origin or gender.
[2] Although the Program states that an individual who is not a member of a group presumed to be socially and economically disadvantaged can apply for certification and therein prove that his disadvantaged status arose from individual circumstances rather than by virtue of membership in a particular group, LAGC alleges invidious application of the racial classifications in the NOAB's Program occurred when one of its members, Boes Iron Works, Inc., applied for DBE certification. LAGC alleges that after applying for DBE certification, Boes Iron Works, Inc. received a letter from the NOAB denying its certification as a DBE and stating:

The application indicates that a white male is the only shareholder, and fails to demonstrate membership in a group entitled to a presumption of disadvantaged status.
[3] La. Const. Art. I, Sec. 3 states:

Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
[4] In Louisiana Associated General Contractors, Inc. v. State, 95-2105 (La.3/8/96), 669 So.2d 1185, we held La. Const. Art. I, Sec. 3 "absolutely prohibits any state law which discriminates on the basis of race." Id. at p. 15, 669 So.2d at 1196.
[5] Although the Program on its face only purports to apply to projects funded with federal dollars, the NOAB used the terms of this Program in the Project at issue which was to be funded solely with local funds. The constitutionality of the Program as applied to federal projects is not at issue as the trial court declared the Program unconstitutional only as applied to non-federal projects.
[6] This broad home rule power is constitutionally protected. In Lafourche Parish Council v. Autin, 94-0985 (La.12/9/94), 648 So.2d 343, we stated:

Art. VI, § 6 was added to the constitution to protect home rule charter governments from unwarrantable interference in their internal affairs by state government. Hence, unless the constitution elsewhere provides justification for such intrusion, § 6 prohibits any state law from changing or affecting, i.e., producing an alteration in or material influence upon, the local government's structure and organization or the distribution or redistribution of its powers and functions.
Id. at p. 17, 648 So.2d at 356 (citations omitted). See also City of Baton Rouge v. Blakeley, 96-1742 (La.9/9/97), 699 So.2d 1053; State v. Saizan, 96-1340 (La.4/8/97), 692 So.2d 1045; City of Baton Rouge v. Williams, 95-0308 (La.10/16/95), 661 So.2d 445; City of Baton Rouge v. Ross, 94-0695 (La.4/28/95), 654 So.2d 1311; City of New Orleans v. Board of Com'rs of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237.