IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30316
Summary Calendar
_____


WALTER DAWSON,

                         Plaintiff-Appellant,

     v.

CITY OF BATON ROUGE; METROPOLITAN COUNCIL,

                         Defendants-Appellees.

_____

          Appeal from the United States District Court
              for the Middle District of Louisiana
                         (96-CV-3365-B)
_____
                       January 7, 1998

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-appellant Walter Dawson appeals the district court's

grant of summary judgment in favor of defendants-appellees the City

of Baton Rouge and the Metropolitan Council on his claim that the

abolition of the Baton Rouge City Council and the creation of the

Metropolitan Council were illegal.  We affirm the judgment of the

district court.

_____

     [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL & PROCEDURAL BACKGROUND

On June 23, 1982, the Parish Council of East Baton Rouge Parish ("Parish Council") approved Resolution No. 19075 ("Resolution"). The Resolution sought to amend the Plan of Government of the City of Baton Rouge and East Baton Rouge Parish ("Plan of Government") to create the Metropolitan Council and concurrently to abolish the then existing separate city and parish councils.

While a majority of the members of the Parish Council of East Baton Rouge Parish ("Parish Council") voted in favor of the Resolution, a majority of the members of the Baton Rouge City Council ("City Council"), all of whom also sat on the Parish Council, voted against it. Once the Parish Council approved the Resolution, it was submitted to the voters of East Baton Rouge Parish for approval. In a special election held on September 11, 1982, a majority of those voting in East Baton Rouge Parish voted to approve the amendments to the Plan of Government contained in the Resolution.

Fourteen years later, on July 11, 1996, plaintiff-appellant Walter Dawson filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge seeking a declaratory judgment that the creation of the Metropolitan Council and the abolition of the City Council was "illegal, unconstitutional, and therefore, void and unenforceable."[1] He also sought an

---

[1] Dawson originally filed a Petition for Writ of Mandamus seeking an order directing the City of Baton Rouge and the Metropolitan Council to call elections for the City Council. The

2

injunction restraining the City of Baton Rouge from maintaining the Metropolitan Council and an order from the court requiring the reinstatement of the City Council as it existed prior to June 23, 1982.  Finally, he sought injunctive relief prohibiting any future elections of Metropolitan Council members to represent the City of Baton Rouge.  Defendants-appellees the City of Baton Rouge and the Metropolitan Council ("Defendants") thereafter removed the case to federal district court.[2]  The parties each submitted motions for summary judgment, and the district court granted Defendants' motion and dismissed the case with prejudice.[3]

## II.   STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same criteria that the district court used in the first instance. Kemp v. G.D. Searle & Co., 103 F.3d 405, 407 (5th Cir. 1997).  We consult the applicable law in order to ascertain the material factual issues, and we then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in

---

state court ordered Dawson to file an amended petition seeking a declaratory judgment rather than mandamus, and the claims in the current suit arise from that petition.

[2]    The Federal district court consolidated this case with two other cases challenging the metropolitan form of government of East Baton Rouge Parish on the ground that it violates Section 2 of the Voting Rights Act of 1965.

[3]    Pursuant to Federal Rule of Civil Procedure 54(b), the district court explicitly stated that its judgment of dismissal applied only to the instant case, and the court simultaneously vacated its order consolidating this case with the two Voting Rights Act cases.

the light most favorable to the nonmovant.  King v. Chide, 974 F.2d 653, 656 (5th Cir. 1992).  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

### III.  DISCUSSION

Dawson contends that the Resolution illegally abolished the City Council because a majority of the City Council did not approve it.  In support of his argument, Dawson relies on the Plan of Government, which states that amendments to it must be made by "special election in the same manner as is provided for the calling and holding of elections on bond issues."  PARISH OF EAST BATON ROUGE & CITY OF BATON ROUGE, LA., PLAN OF GOVERNMENT § 11.09 (1979).  Dawson interprets this language to require strict adherence to sections 1281 through 1295 of Title 18 of Louisiana's Revised Statutes, which govern bond elections. Section 1284 states, in pertinent part, that "[t]he election shall be ordered by a resolution of the governing authority of the political subdivision."  LA. REV. STAT. ANN. § 18:1284(A) (West 1979).  Dawson contends that because the Parish Council was not the governing body of Baton Rouge, it was not authorized to call a special election regarding the Resolution.  He therefore argues that the special election was unauthorized and that the Metropolitan Council is an unauthorized governmental body.  This

4

argument lacks merit.

The Louisiana Constitution states that existing Home Rule Charters, such as the Plan of Government at issue in this case, "may be amended, modified, or repealed as provided therein." LA. CONST. art. VI, § 4; see also City of Baton Rouge v. Williams, 661 So. 2d 445, 447 (La. 1995) (stating that the Plan of Government is an existing home rule charter as defined by the Louisiana Constitution of 1974). Section 11.09 of the Plan of Government states that amendments to it "may be proposed by majority vote of all the members elected to the Parish Council." PARISH OF EAST BATON ROUGE & CITY OF BATON ROUGE, LA., PLAN OF GOVERNMENT § 11.09 (1979) (emphasis added). It further states that in order to become effective, the proposed amendment must be approved by a majority of the votes cast in a special election that is open to all who are eligible to vote in East Baton Rouge Parish. Id.; see also City of Baton Rouge v. Blakely, 699 So. 2d 1053, 1057 (La. 1997) ("Section 11.09 specifically provides for the amendment of the Plan of Government by a majority vote in favor of the amendment when submitted to the qualified voters of the parish."). Thus, it is clear that it was the special election approving the amendment to the Plan of Government, not the Parish Council's approval of the Resolution proposing the amendment, that abolished the City Council and created the Metropolitan Council.

Relying on sections 1283 and 1284, Dawson nonetheless contends that the approval of the City Council was required

5

before the amendment could lawfully become effective.[4] Section 11.09 makes no mention of any requirement that the City Council approve amendments to the Plan of Government. PARISH OF EAST BATON ROUGE & CITY OF BATON ROUGE, LA., PLAN OF GOVERNMENT § 11.09 (1979). Moreover, as the district court correctly determined, section 11.09's reference to the bond election statutes indicates that the special election should be conducted in the <u>manner</u> in which bond elections are conducted, not that the requirement of City Council approval should be imported into the Plan of Government's amendment process. <u>Id.</u> ("The Parish Council shall call and hold such special election in the same <u>manner</u> as is provided for the calling and holding of elections on bond issues." (emphasis added)). Indeed, while section 11.09 never mentions the City Council in its discussion of the amendment process, in other sections, the Plan of Government does recognize the role of the City Council as the governing body of the City of Baton Rouge. <u>Compare</u> <u>id.</u> § 11.09 <u>with</u> <u>id.</u> § 2.01(a). Thus, it is clear that if the drafters of the Plan of Government had intended for the City Council to play a role in the amendment process, they would have done so explicitly.

Dawson has failed to present any legal authority for his contentions, and the plain language of the Plan of Government

---

[4] In support of his argument, Dawson cites <u>Liter v. City of Baton Rouge</u>, 245 So. 2d 398 (La. 1971), and <u>Lathan v. City of Baton Rouge</u>, 258 So. 2d 615 (La. App. 1972). These cases do not address the Parish Council's authority to propose amendments to the Plan of Government, nor do they support Dawson's contention that the consent of the City Council is required before such an amendment can become effective.

allows the Parish Council to propose amendments and directs that such amendments will become effective if approved by a majority of the votes cast in an election open to those eligible to vote in East Baton Rouge Parish. We therefore conclude that Dawson's claim that approval of the City Council was required in order to amend the Plan of Government is meritless.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.