661 So.2d 432 (1995)
Gregory J. MATHERNE
v.
GRAY INSURANCE COMPANY, Solid Waste Disposal, Inc. and The Estate of Abdon J. Billiot.
Daniel J. GUIDRY
v.
The GRAY INSURANCE COMPANY, et al.
Marguerite B. Billiot, Wife of/and Whitney J. BILLIOT.
v.
The STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, and Gregory J. Matherne.
No. 95-CA-0975.
Supreme Court of Louisiana.
October 16, 1995.
*433 John E. Baker, Metairie, Charles T. Williams, Jr., Blue, Williams, New Orleans, John C. Young, Jeffrey A. Renshaw, Barry G. Toups, Baton Rouge, for Applicant.
Roger S. Bernstein, Bernstein & Bernstein, New Orleans; Philip E. Henderson, Joseph A. Reilly, Jr., Henderson, Hanemann & Morris, Houma, Byron M. UnKauf, New Orleans, Mary Frances Waitz Riviere, J. Dana Ortego, Waitz & Downer, Houma; for Respondent.
Anthony R. Messina, New Orleans, Jeron J. LaFargue, Gretna, Hans J. Liljeberg, Harahan, for Jefferson Parish (Amicus Curiae).
Kentley R. Fairchild, Michael J. Samanie, Herbert W. Barnes, Jr., Houma, for Daniel Rhodes, Judy Rhodes, Michelle Rhodes (Amicus Curiae).
Charles L. Patin, Jr., Baton Rouge, Michael Robert Carson Riess, New Orleans, for Embry Teel, Patricia Teel (Amicus Curiae).
CALOGERO, Chief Justice[*].
The Seventeenth Judicial District Court's declaration that La. R.S. 9:2800 B[1] was unconstitutional as a violation of LA. CONST. art. XII, § 10(A)[2] triggered the right to a direct appeal.[3] Instead of filing a notice of appeal in the district court and thereafter lodging their appeal in this Court, the State filed, in this Court, an "Application for Writ of Supervision And/Or Direct Appeal." We *434 stayed all proceedings in the trial court and docketed the case as an appeal.
Initially, suit was filed on behalf of plaintiff, Matherne, naming as defendants Gray Insurance, Solid Waste Disposal, Inc., and the Estate of Abdon J. Billiot. Appearing as third-party plaintiffs, Gray Insurance and Solid Waste Disposal, Inc. alleged that the accident was caused by the fault and negligence of the State, through the Department of Transportation and Development (DOTD). Thereupon, plaintiff Matherne filed a supplemental and amended petition adding the State as an additional party.
In response to plaintiffs' amended petition for damages, the State denied liability, contending that the accident was caused by Abdon J. Billiot's negligent driving. "Alternatively, if it is found that Louisiana Highway 308 and its shoulder were defective, which is specifically denied, then the State asserts that it did not have notice of said defect or a reasonable period of time in which to correct said defect." Plaintiffs then filed a "Motion to Strike Defenses And/Or Declare the Provisions of 9:2800 B Unconstitutional," asking the district court to "strike" the notice requirement of 9:2800 B because the State failed to plead the defense timely or alternatively to have the statute declared unconstitutional.[4] Ruling on this motion, the district judge declared La.R.S. 9:2800 B unconstitutional.
After a thorough review of the record, and considering the briefs and oral argument, we determine that the trial court's ruling is premature. The issue need not be resolved at this time and the judgment thus will be upset.
On January 9, 1993, as Abdon J. Billiot rounded a curve on Louisiana Highway 308, one or more of the right side tires on his truck ran off the paved portion of the road onto the shoulder. He lost control of the truck, which then fell onto its side in the middle of the highway, whereupon it was struck by oncoming vehicles, including a vehicle owned and operated by Daniel J. Guidry and a second vehicle owned and operated by Gregory J. Matherne.
Consequently, lawsuits were filed by Matherne and Guidry seeking damages from injuries sustained in the accident. Marguerite B. Billiot and Whitney J. Billiot filed suit seeking damages sustained as a result of the death of their son, Abdon J. Billiot. Subsequently, several amicus curiae briefs were filed.[5]
Courts are generally reluctant to address the constitutionality of legislation unless required to do so by the case and its issues then before the court. No rule of practice is better settled than "never to anticipate a question of constitutional law in advance of the necessity of deciding it." Communist Party of U.S. v. Subversive Activities Control Board, 367 U.S. 1, 72, 81 S.Ct. 1357, 1397, 6 L.Ed.2d 625 (1961) (citing Liverpool, New York & Philadelphia S.S. Co. v. Commissioners, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885); State of Arizona v. State of California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154 (1931)). "In part, this principle is based upon the realization that, by the very nature of the judicial process, courts can most wisely determine issues precisely defined by the confining circumstances of particular situations." See Parker v. County of Los Angeles, 338 U.S. 327, 70 S.Ct. 161, 94 L.Ed. 144 (1949). Hence, until the circumstances surrounding the State's knowledge of the defect in the road are determined, it is wiser for this Court not to pass on a constitutional issue when such may not be necessary in the resolution of the case.
Additionally, the ripeness doctrine is a tool designed to determine when judicial *435 review is appropriate.[6] Gregory M. Stein, Regulatory Takings and Ripeness in the Federal Courts, 48 VAND.L.REV. 1, 11 (1995). Generally, the ripeness doctrine is viewed as being both constitutionally required and judicially prudent. Id. "The prudential restrictions result from the fact that most courts would rather avoid speculative cases, defer to finders of fact with greater subject matter expertise, decide cases with fully-developed records, and avoid overly broad opinions, even if these courts might constitutionally hear a dispute." Id. See Abbott Laboratories v. Gardner, 387 U.S. 136, 149-56, 87 S.Ct. 1507, 1515-1519, 18 L.E.2d 681 (1967).
Like standing, ripeness law has changed over the years. "Most legal scholars approve of how the doctrine currently operates."[7] Marla Mansfield, Standing and Ripeness Revisited: The Supreme Court's "Hypothetical" Barriers, 68 N.D.L.REV. 1, 19 (1992). Before addressing the present status of the ripeness doctrine, however, some history is insightful.
"Early cases[8] insisted that review was appropriate only when private parties were directly impacted." Id. Justice Frankfurter, for example, stated:

That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.
Boyd, 347 U.S. at 224, 74 S.Ct. at 448.
Then, the United States Supreme Court in Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515-1516, 18 L.Ed.2d 681 (1967), identified two elements that are relevant in establishing the ripeness of a case: (1) the hardship to the parties if a court does not decide; and (2) the fitness of the issues for decision. If a party will be significantly injured by a court's failure to decide an issue quickly, then the court is more likely to determine that the dispute has matured into the required case or controversy. Stein, Regulatory Takings and Ripeness in the Federal Courts, 48 VAND.L.REV. at 12. Additionally, if the record is well developed and the risk of a speculative or over broad opinion is lessened, then the issue is more likely fit for decision. Id.
Further, "[a]n advisory opinion system is unnecessary and, for the State of Louisiana, an unwise choice." Pascal F. Calogero, Jr., Advisory Opinions: A Wise Change for Louisiana and Its Judiciary?, 38 LOY.L.REV. 329, 385 (1992). Louisiana has never had a constitutional or statutory provision authorizing the Louisiana Supreme Court to issue advisory opinions.[9]Id.
Finally, there are various policy considerations supporting the remand of this case based upon a premature trial court ruling. "Until the controversy has become concrete and focused, it is difficult for the Court to evaluate the practical merits of the position of each party." RONALD D. ROTUNDA, & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 2.13 (2d ed. 1992). "If a record is concrete rather than abstract in nature, the Court may find a way of interpreting the statute to avoid or minimize the constitutional issue." *436 Id. Moreover, there is the possibility that if the Court waits for an actual controversy, the whole constitutional problem may be eliminated by later developments. Id.
Notwithstanding the foregoing, there is no doubt that this Court has the power and authority to tackle the constitutional issue presented by the district court's ruling. This, however, does not mean that we are required to do so. We are only obligated to rule if the procedural posture of the case and the relief sought by the appellant demands that we do so. Absent such compulsion, ruling on the constitutionality at this juncture lies within this Court's discretion.
There is no good reason for the district court, or this Court now, to address the constitutionality of La.R.S. 9:2800 B with the case in its present posture. La.R.S. 9:2800 B and its declaration that "no person shall have a cause of action ... under Civil Code Article 2317 against a public entity for damages caused by ... things within its care and custody unless the public entity had actual or constructive notice of ... vice or defect ... and the public entity has had a reasonable opportunity to remedy the defect ...," may indeed offer the defendant State of Louisiana a defense to this multi-million dollar claim no actual or constructive notice of the defecta defense which might provide the plaintiff an opportunity to attack the constitutionality of R.S. 9:2800 B. It is not necessary, and was not necessary, for the district court judge to do so here when it is not yet certain that this case is one in which factually the absence of actual or constructive notice of the vice or defect in the shoulder and roadway within the State's Civ.Code art. 2317 custody is or will apply as a defense. In fact, plaintiff alleges in his petition that the State had notice of the defective roadway.
The district court judge need not have, and from our present perspective should not have, addressed the argument and declared R.S. 9:2800 B unconstitutional before trial, simply upon plaintiffs challenging and arguing for the disallowance of a possible State defense when it has not been determined that the R.S. 9:2800 B defense to Civ.Code article 2317 is even applicable under the facts of the case.
Accordingly, this Court determines that the ruling in the district court was premature. The plaintiffs will not be significantly injured by this Court's failure to decide the constitutional issue because the issue may not arise hereafter in this case. The record is not well developed. In fact, we are remanding the case so that the record can be developed. A speculative ruling may then be avoided.
We therefore reverse the judgment of the district court and remand for further proceedings. We will hold for another day, when and if this issue requires resolution, the question of the constitutionality of R.S. 9:2800 B.[10]
REVERSED AND REMANDED.
LEMMON, J., concurs.
NOTES
[*] Judge Ned Doucet, Jr., Court of Appeal, Third Circuit, sitting by assignment in place of Justice James L. Dennis.

Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] 9:2800 B provides:

Except as provided in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
[2] LA. CONST. art. XII, § 10(A) provides: "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."
[3] LA. CONST. art. 5, § 5(D) provides: "[A] case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional."
[4] In plaintiffs' memorandum in support of their motion to strike and/or declare 9:2800 B unconstitutional, plaintiffs admit that "[a]lthough the State ... has not specifically pled the notice provisions of ... 9:2800 B as a defense to this action, it is anticipated that the defendant will attempt to introduce evidence of its lack of knowledge of the allegedly defective shoulder in an effort to deny plaintiffs recovery."
[5] Daniel Rhodes, Judy Rhodes, and Michelle Rhodes filed an amicus curiae brief in opposition to the State's writ application. The Louisiana Municipal Association and the Parish of Jefferson filed amicus curiae briefs in support of the State's writ application.
[6] On ripeness, see generally PAUL M. BATOR ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 244-55 (3d ed. 1988); ERWIN CHEMERINSKY, FEDERAL JURISDICTION 98-109 (1989).
[7] Gene R. Nichol, Jr., Ripeness and the Constitution, 54 U. CHI.L.REV. 153, 155 (1987).
[8] See, e.g., Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948); International Longshoremen's Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); Baker v. Carr, 369 U.S. 186, 266, 82 S.Ct. 691, 737, 7 L.Ed.2d 663 (1962) (Frankfurter, J., dissenting).
[9] Article VII, § 3 of the Louisiana Constitution of 1921 provided that "[n]o function shall ever be attached to any court of record, or to judges thereof, except such as are judicial." Article VII, § 35 provided that district courts "shall have original jurisdiction in all civil matters regardless of the amount in dispute." Historically, the Louisiana Supreme Court interpreted those provisions as requiring the existence of a ripe dispute between adverse parties before the courts could exercise jurisdiction. See, e.g., Louisiana Indep. Auto Dealers Ass'n v. State, 295 So.2d 796, 799 n. 1 (La.1974).
[10] This constitutional question may never reach this Court in a posture requiring resolution because the Louisiana Legislature in its 1995 session passed Act No. 1328, a "joint resolution," in accordance with LA. CONST. art. XIII, § 1(A), proposing to amend LA. CONST. art. XII, § 10(C) to put to rest the constitutional authority of the legislature to limit or prescribe the extent of the liability of the state and its agencies. The proposed amendment, which will appear on the ballot at the October 21, 1995 gubernatorial primary election, provides:

(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages.... The legislature may provide that such limitations, procedures, and effects of judgment shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.