980 So.2d 643 (2008)
STATE of Louisiana
v.
Kenneth W. LANCLOS.
Nos. 2007-OK-0082, 2007-KA-0716.
Supreme Court of Louisiana.
April 8, 2008.
*645 James D. Caldwell, Attorney General, Paul D. Connick, Jr., District Attorney, Terry Michael Boudreaux, Norma Becerra Broussard, Desiree' Marie Valenti, Assistant District Attorneys, for applicant.
Herman, Herman, Katz & Cotlar, Soren Erik Giseson, New Orleans, for respondent.
JOHNSON, Justice.
This is a direct appeal by the State of Louisiana pursuant to La. Const. art. V § 5(D), contesting the trial court's finding that the $5.00 court cost assessed pursuant to La. R.S. 32:57(G) is an unconstitutional tax to be levied improperly through the judicial system, and thus a violation of the separation of powers doctrine of La. Const. art. II § 2. For the following reasons, we affirm the decision of the trial court.

FACTS AND PROCEDURAL HISTORY
The Greater New Orleans Expressway Commission ("GNOEC") polices the Huey P. Long Bridge and operates, polices, and maintains the Lake Pontchartrain Causeway Bridge. La. R.S. 32:57(G), which became effective on July 10, 1997, provides for imposition of an additional $5.00 cost when any person pleads nolo contendere, pleads guilty, or is found guilty of a motor vehicle offense occurring on either of the two bridges or their respective approaches when the citation is issued by a police officer employed by the GNOEC. The fees are to be deposited into the state treasury, then credited to a special fund which is used by the GNOEC to supplement the salaries of its police officers and for the acquisition and upkeep of police equipment.
La. R.S. 32:57(G) expressly provides:
(1) Notwithstanding any provision of law to the contrary, any person who is found guilty, pleads guilty, or pleads nolo contendere to any motor vehicle offense when the citation was issued for a violation on the Huey P. Long Bridge or the Lake Pontchartrain Causeway Bridge or approaches to and from such bridges by police employed by the Greater New Orleans Expressway Commission shall pay an additional cost of five dollars.
(2) All proceeds generated by this additional cost shall be deposited into the state treasury. After compliance with the requirements of Article VII, Section 9(B) of the Constitution of Louisiana relative to the Bond Security and Redemption Fund, and prior to monies being placed in the state general fund, an amount equal to that deposited as required in this Subsection shall be credited to a special fund hereby created in the state treasury to be known as the Greater New Orleans Expressway Commission Additional Cost Fund. The monies in this fund shall be appropriated by the legislature to the Greater New Orleans Expressway Commission and shall be used by the commission to supplement the salaries of P.O.S.T. certified officers and for the acquisition or upkeep of police equipment. All unexpended and unencumbered monies in this fund at the end of the fiscal year shall remain in such fund. The monies in this fund shall be invested by the state treasurer in the same manner as monies in the state general fund and interest earned on the investment of monies shall be credited to this fund, again, following compliance with the requirements of Article VII, Section 9(B) of the Constitution, relative to the Bond Security and Redemption Fund. The monies appropriated by the legislature pursuant to this Paragraph shall not displace, replace, or supplant appropriations otherwise made from the general fund for the *646 Greater New Orleans Expressway Commission.
On March 21, 2006, while driving southbound on the Causeway Expressway, the defendant, Kenneth Lanclos, was pulled over by a GNOEC officer and issued a citation for speeding in violation of La. R.S. 32:63(A).[1] On July 21, 2006, the defendant appeared in First Parish Court for the Parish of Jefferson, and agreed to plead guilty to a violation of improper equipment pursuant to La. R.S. 32:53(A).[2] The defendant was issued a "Fee and Fine Slip" which assessed, and ordered him to pay, $129.75 in court costs in addition to the $65.00 fine for the offense. Included in the $129.75 court costs was a $5.00 cost designated as a "Causeway Citation" (hereinafter "GNOEC cost").
After receiving the Fee and Fine Slip, defense counsel immediately made a hand written notation on the printed slip indicating that the defendant moved to strike "as unconstitutional the Causeway cost of $5.00" because the assessment "violates separation of powers as constitutes an unconstitutional tax to be assessed and collected by the court. . . ." Defense counsel then appeared in court before the Traffic Hearing Officer ("THO") and orally moved to strike the $5.00 GNOEC cost as unconstitutional, specifically urging that "the GNOEC court cost violates the Separation of Powers guarantee in the Louisiana Constitution as it constitutes a tax that is being collected by the Courts." The THO denied the motion.
On July 28, 2006, the defendant timely filed a "Motion for New Trial and Appeal from Decision of Traffic Hearing Officer," in First Parish Court for the Parish of Jefferson, challenging the THO's denial of the motion to strike the $5.00 GNOEC cost as unconstitutional. The defendant mailed a copy of the motion and supporting memorandum to the Jefferson Parish District Attorney's Office and to the Louisiana Attorney General's Office. Counsel also requested formal service of the motion on the District Attorney's Office and the Attorney General.
The First Parish Court set the motion for hearing on October 5, 2006, before the Honorable Niles Hellmers, presiding ad hoc. Defense counsel made clear at the outset of the proceedings that defendant was contesting only the $5.00 GNOEC cost assessment, and not appealing his conviction. Neither the District Attorney nor the Attorney General were present for the hearing, but defense counsel informed the court that "my understanding is that speaking with the DA, that the DA's Office has no position on the issue on . . . the sole legal issue that we're really here on, which *647 is whether this provision of [R.S.] 32:57 is constitutional or not." Judge Hellmers granted the defendant's motion, holding that the GNOEC cost imposes an unconstitutional tax to be levied improperly through the judicial system, and that La. R.S. 32:57(G) is, thus, unconstitutional because it violates the separation of powers doctrine. The State filed this instant appeal.[3]

DISCUSSION
The issue before this Court is whether La. R.S. 32:57(G), requiring Courts to assess an additional $5.00 cost on defendants who receive a traffic citation from an officer of the GNOEC, is unconstitutional as a violation of the separation of powers doctrine of the Louisiana Constitution.[4]
Before addressing the trial court's holding that La. R.S. 32:57(G) is unconstitutional, we must first determine whether the constitutional issue is properly before this Court. In Ring v. State, Dept. of Transp. and Development, XXXX-XXXX (La.1/14/03), 835 So.2d 423, this Court stated:
We have repeatedly and consistently held that courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy. State v. Fleming, 2001-2799 (La.6/21/02), 820 So.2d 467, 470; Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1199; Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd., 97-0752 (La.10/31/97), 701 So.2d 130, 132; Cameron Parish Sch. Bd. v. Acands, Inc., 96-0895 (La.1/14/97), 687 So.2d 84, 87; White v. West Carroll Hosp., Inc., 613 So.2d 150, 157 (La.1992). Further, our jurisprudence counsels that the practice of courts is "never to anticipate a question of constitutional law in advance of the necessity of deciding it." Matherne v. Gray Ins. Co., 95-0975 (La.10/16/95), 661 So.2d 432, 434; Communist Party of U.S. v. Subversive Activities Control Bd., 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) (citing Liverpool, New York & Philadelphia S.S. Co. *648 v. Commissioners, 113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899 (1885)); Arizona v. California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154 (1931). Courts should avoid constitutional rulings when the case can be disposed of on non-constitutional grounds. Blanchard v. State Through Parks and Recreation Commission, 96-0053 (La.5/21/96), 673 So.2d 1000, 1002.
Ring, 835 So.2d at 426-427. In Matherne v. Gray Ins. Co., 661 So.2d 432, 95-0975 (La.10/16/95), we explained that ". . . the ripeness doctrine is a tool designed to determine when judicial review is appropriate" and that the rationale behind the doctrine is that "most courts would rather avoid speculative cases, defer to finders of fact with greater subject matter expertise, decide cases with fully-developed records, and avoid overly broad opinions, even if these courts might constitutionally hear a dispute." Matherne, 661 So.2d at 435.
The State argues that the constitutional issue is not ripe for review because there are procedural defaults which bar consideration of the merits. The State first argues that the defendant did not comply with the contemporaneous objection rule of La.C.Cr.P. art. 841 at the THO level because he made his written and oral motions to strike the GNOEC cost assessment with the THO after he received the Fee and Fine Slip.
Defendant argues that the fact that he did not place the objection on the record until after agreeing to plead guilty to a lesser offense does not amount to a waiver of the objection. Defendant argues that the pretrial conference between the district attorney and his counsel, during which the plea agreement was reached, took place outside of the presence of the THO, and that defense counsel made the objection to the GNOEC cost at his very first appearance before the THO.
La. C. Cr. P. Art. 841(A), the contemporaneous objection rule, provides:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
There are two purposes to this rule: to put the trial court on notice of the alleged irregularity or error, so that the trial judge can cure the error, and to prevent a party from gambling for a favorable outcome and then appealing on errors that could have been addressed by an objection if the outcome is not as hoped. State v. Knott, 05-2252 (La.5/5/06), 928 So.2d 534; State v. Thomas, 427 So.2d 428 (La.1982).
We find that the defendant sufficiently complied with the contemporaneous objection rule in this case. The defendant raised the constitutional issue before the THO at the first opportunity to do so immediately after inspecting the Fee and Fine Slip and determining that the $5.00 GNOEC cost had been assessed. The objection was made in writing and orally at his first and only appearance before the THO. Defense counsel thereby provided the THO with the opportunity to rule on the merits of the motion during the same proceedings that led to the defendant's conviction for the traffic violation.
The State also argues that the defendant's guilty plea before the THO waived, at any level of review, all non-jurisdictional defects, including the challenge to the GNOEC cost assessment, because he did not reserve review of that question as part of the guilty plea colloquy. Defendant argues that his plea was not *649 conditioned on a particular sentence, or on him waiving any constitutional challenge to the court costs assessed in connection with a traffic offense. We agree with the defendant. The defendant's challenge did not address the merits of the prosecution. As the defendant points out, in the absence of a specific sentencing provision in a plea agreement, a defendant who pleads guilty is not precluded from challenging the sentence imposed as a result of that guilty plea. See: La. C. Cr. P. art. 881.2(A).[5]
The State also asserts that the defendant's use of a motion for new trial, incorporated as part of the notice of appeal from the THO, was improper because La.C.Cr.P. art. 851, setting forth the grounds for such motions, does not provide for attacking cost assessments imposed as part of a sentencing following conviction.[6] The State argues that the motion for a new trial presupposes that there was actually a trial. The State suggests that the proper procedural pleading is a motion to quash pursuant to La.C.Cr. P. Art 532(1).[7]
Defendant argues that he filed a "Motion for New Trial and Appeal from Decision of Traffic Hearing Officer" pursuant to La. R.S. 13:1452.1, which provides for appeals from decisions of traffic hearing officers.[8] Defendant notes that La. C. Cr. P. art. 532(1) provides that a motion to quash can be brought to challenge the statute pursuant to which the charge is *650 brought. Defendant argues that he did not challenge the statute upon which his speeding citation was based, and, thus, the article is inapplicable.
We reject the State's argument. Although the motion for a new trial incorporated in the motion for an appeal from the THO to the First Parish Court may have been a misnomer, it did raise the issue for Judge Hellmers to consider in his de novo review of the proceedings conducted before the THO.[9]
Finally, the State argues that even if a motion for new trial did provide a proper vehicle for raising the issue, the failure of either the District Attorney or the Attorney General to appear at the proceedings, a result of defects in service of the motion, meant that the motion was not tried contradictorily with the State, as contemplated by La.C.Cr.P. art. 852.[10] Defendant argues that he properly served a copy of the motion on the District Attorney's Office by mail, which was proper pursuant to Rules for Criminal Proceedings in District Courts, Rule 15.1.[11] The record reflects that although defendant requested that the notice of hearing be served on the district attorney, service was improperly made on a private attorney who is unrelated to the case. The defendant also placed the State Attorney General's Office on notice of the challenge by serving it with copies of the pleadings. Defendant asserts that on the day of the hearing, defense counsel met with the assistant district attorney assigned to court on that day, who advised defense counsel that his office had no position on the legal question presented by the appeal, and would not be making an appearance during the hearing on the motion.
Considering the fact that the State was aware of defendant's challenge to the constitutionality of the statute, and the fact that the State has admitted that it would not have introduced any evidence at the hearing, we do not find that any lack of official service to be a prohibition to this Court addressing the issue, especially considering the fact that we will review the issue de novo.[12] The State has admitted that this is strictly a legal issue which did not require any evidence to be submitted. Thus, the State was not denied an opportunity to introduce any relevant evidence on the issue of constitutionality. While the State may have been technically deprived of the opportunity to argue against defendant's motion in the parish court because of defects in service, the present appeal provided the State with a forum to make its substantive response.
For these reasons, we find that the merits of the constitutional issue are ripe for review.

*651 Constitutional Issue

The issue presented in this case is whether the $5.00 fee assessed pursuant to La. R.S. 32:57(G) is a tax collected by the courts, and thus a violation of the separation of powers doctrine found in La. Const. art. II. The separation of powers doctrine prohibits any one of the three branches of government from exercising power belonging to another branch. La. Const. art. II, §§ 1 and 2 divide governmental power into three separate branches and provide that no one branch shall exercise powers belonging to the others. These sections establish the basis for the recognition of inherent powers in the judicial branch which the legislative and the executive branches cannot abridge. Konrad v. Jefferson Parish Council, 520 So.2d 393, 397 (La. 1988); Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d 423, 426 (La.1979). Under the doctrine of inherent powers, courts have the power (other than those powers expressly enumerated in the constitution and the statutes) to do all things reasonably necessary for the exercise of their functions as courts. The inherent powers of the judicial branch necessarily encompass the authority to administer the business of the courts. Konrad, 520 So.2d at 397.
In Safety Net for Abused Persons v. Segura, 96-1978 (La.4/8/97), 692 So.2d 1038, this Court considered the constitutionality of La. R.S. 13:1906, which directed the clerk of the city courts of New Iberia and Jeanerette, and the municipal courts of Delcambre and Loreauville, to collect an additional fee in civil and criminal cases to support a program to aid victims of domestic violence. Specifically, the statute directed that the money collected be deposited in a special fund to benefit SNAP, a domestic violence program and shelter serving Iberia Parish.
This Court stated that "[f]ollowing the trend restricting the imposition of court fees to instances where they fund functions of the judicial system, we hold that court filing fees may be imposed only for purposes relating to the administration of justice. This requirement is inherent in our constitutional right of access to the courts and the constitutional separation of powers doctrine. Moreover, our clerks of court should not be made tax collectors for our state, nor should the threshold to our justice system be used as a toll booth to collect money for random programs created by the legislature." Based on this holding, we went on to determine whether the fee imposed by La. R.S. 13:1906 was sufficiently related to the administration of justice to pass constitutional muster.
After examining the statute, we found that the money collected did not go to court services, or to any other entity associated with the judicial system. Instead, the money went to a private, nonprofit corporation to be used at its discretion for domestic violence programs. Because the "fee" was not assessed to defray the expenses of litigation or to support the court system, and was a revenue raising measure designed to fund a particular social program, we found that the "fee" imposed by the statute was, in reality, a tax. Safety Net, 692 So.2d at 1041. We noted that "[a] charge that has as its primary purpose the raising of revenue, as opposed to the regulation of public order, is a tax. Id. Moreover, a tax is a charge that is unrelated to or materially exceeds the special benefits conferred upon those assessed." Id. [citing Audubon Insurance Co. v. Bernard, 434 So.2d 1072, 1074 (La.1983); 4 Cooley, The Law of Taxation, Ch. 29, § 1784 (4th ed.1924)].
This Court held that La. R.S. 13:1906 imposed an unconstitutional filing fee in violation of the right of access to the *652 courts and of the separation of powers doctrine because its purposeto fund domestic abuse serviceswas unrelated to the administration of justice. Id. at 1043. We noted that "[w]hile domestic abuse programs are indisputably worthy and necessary in society today, they are essentially social welfare programs that cannot be funded with filing fees that are imposed on all civil suits and collected by the judiciary as mandated by La. R.S. 13:1906." Id.
In reaching this conclusion, we noted that while SNAP provides a myriad of laudable services for victims of domestic abuse, the primary ones being shelter, counseling and information for abuse victims, these services have no logical connection to the judicial system. SNAP is not a part of the judicial branch, it serves no judicial or even quasi-judicial function, it is not a program administered by the judiciary, and it is not a link in the chain of the justice system. Id. at 1043-1044.
Guided by our decision in Safety Net, the question that we must answer in this case is whether the fee imposed by La. R.S. 32:57(G) is sufficiently related to the administration of justice to pass constitutional muster. Once collected, the $5.00 assessment imposed by La. R.S. 32:57(G) is deposited in the state's general treasury. Later, an equal amount is allocated by the Legislature to a special fund to be used by the GNOEC "to supplement the salaries of P.O.S.T. certified officers and for the acquisition or upkeep of police equipment." La. R.S. 32:57(G)(2). Therefore, the question before this court is whether the funding of salaries and equipment of the GNOEC is a function of the "judicial system."
The State asserts that the $5.00 fee in this case has a logical connection to the judicial system because it benefits a link in the chain of the judicial system. The State argues that law enforcement operates in the realm of the criminal justice system, presided over by the judiciary. The State asserts that law enforcement agencies are related in a material way to the criminal justice system and that they are part of the traditional institutions that constituted the criminal justice system. Further, the State points out that the GNOEC cost is assessed only to those who are convicted of offenses cited by the Causeway Police. Thus, the relation between the cost, who pays it, and where it goes, is evident.
The defendant argues that the GNOEC cost is actually a tax. The defendant argues that, as in Safety Net, this cost, although for a laudable purpose, is not assessed to defray the expenses of litigation or to support the court system; rather, it is imposed in order to raise revenue to pay the Commission's police officers and maintain police equipment. The defendant further argues that the fact that this cost is an impermissible tax is highlighted by the fact that all funds collected are deposited in the State's Bond Security and Redemption Fund. Thus, regardless of the possible end allocation of the monies, to the extent that the proceeds collected from the GNOEC costs are first used to pay general state debts as part of the state treasury, the fund unquestionably represent general tax revenues that are being used to fund the obligations of the State.
The defendant also argues that the GNOEC cost is not sufficiently related to the court system as required by Safety Net. Defendant argues that the GNOEC cost does not alleviate any costs related to the criminal courts; rather, the statute's purpose is to help fund the GNOEC's police department, thereby defraying the GNOEC's costs, which is an executive branch function. Defendant argues that despite the fact that there is some logical connection between police departments *653 and the criminal judicial system, law enforcement agencies and the courts are separate and distinct entities with different roles and functions that belong to different branches of government, and costs and fees related to one do not necessarily relate to the other. Defendant argues that the cost imposed by La. R.S. 32:57(G) bears no relation to an individual's particular offense and does not help defray the costs of prosecuting that particular individual.
The defendant also points out that if the GNOEC cost was proposed today, it would not satisfy the Judicial Council's General Guidelines Regarding the Evaluation of Requests for Court Costs and Fees, which were promulgated on December 31, 2004. The Guidelines define a "court cost" as a cost "used to defray the operational costs of courts and the court-related operational costs of law enforcement, clerks of court, district attorneys, and indigent defense system, state and local probation and parole functions, and other court-related functions. . . ." Guidelines at 2(a). "Courtrelated operational costs" are those costs that are in "direct support" of the pre-adjudicative, adjudicative, and post-adjudicative functions of a court, including but not limited to: training; data sharing; law enforcement service of process; court reporting; pro se assistance; certain treatment programs sponsored or closely affiliated with the courts; bailiff services; short-term detention; probation legal representation; prosecution; legal research; court-related technologies; informal adjudicative programs such as diversion, alternative dispute resolution, restorative justice, pre-trial and such other programs that are either sponsored by or closely affiliated with the courts. Guidelines at 2(b). Further, defendant argues that the stated purposes of the GNOEC cost are not compatible with the Guidelines' standards for appropriate purposes for court costs. Particularly, the Guidelines suggest that appropriate purposes for a court cost include: (1) defraying the costs of court-related operational costs of other agencies; and (2) supporting an activity "in which there is a reasonable relationship between the fee or court cost imposed and the costs of the administration of justice." Guidelines at 7.
This Court reiterated in Safety Net that "[t]he nature of a charge is determined not by its title, but by its incidents, attributes and operation effect. Thus, the nature of a charge must be determined by its substance and realities, not its form." Safety Net, 692 So.2d at 1041(citing Gallaspy v. Washington Parish Police Jury, 94-1434, p. 3 (La.11/30/94); 645 So.2d 1139, 1141; Reed v. City of New Orleans, 593 So.2d 368, 371 (La.1992). Based upon this Court's decision in Safety Net and the Judicial Council's Guidelines,[13] we find merit in defendant's argument that La. R.S. 32:57, in so far as it imposes an additional $5.00 fee used to supplement police officer salaries and to purchase or maintain police equipment, violates the doctrine of separation of powers.
In Safety Net, we distinguished a penalty assessed by statute as a "court cost" from a tax. We defined "tax" as "a charge that has as its primary purpose the raising of revenue, as opposed to the regulation of public order." Safety Net, 692 So.2d at 1041. We agree with the defendant that La. R.S. 32:57(G) is a charge that has as its primary purpose the raising of revenue, and is, therefore, a "tax." As provided in the statute, the $5.00 cost is collected for *654 the purpose of supplementing police salaries and acquisition and maintenance of police equipment. Funding police salaries and the maintenance of police equipment are the responsibility of the local tax collection authorities, not the judiciary.
Although a police department may be considered to be a "link in the chain" of the criminal justice system, and there is some logical connection between a police department and the criminal justice system, we find that police salaries and uniform equipment and maintenance is too far attenuated from the "administration of justice," to be considered a legitimate court cost. To hold otherwise would start us down a slippery slope, and we must draw the line at some point. Every expense incurred by the police department in its role in enforcing the laws of this state cannot be funded through "court costs." To do so would overly burden and unduly infringe on the court's administration of the judicial court system.
Accordingly, we affirm the trial court's finding that the $5.00 assessment provided in La. R.S. 32:57(G) is a "tax" funded through the judiciary in violation of the doctrine of separation of powers.

DECREE
For the above reasons, we affirm the judgment of the First Parish Court finding that R.S. 32:57(G) is unconstitutional.
NOTES
[1] La. R.S. 32:63(A): provides:

Whenever the department shall determine upon the basis of an engineering and traffic investigation that any maximum speed set forth in this Chapter is greater or less than is reasonable or safe under the conditions found to exist upon any highway of this state, or any part thereof, the department may determine and declare a reasonable and safe maximum speed limit thereat, which, when appropriate signs giving notice thereof are erected, shall be effective at all times or at such specific times as may be determined by the department.
[2] La. R.S. 32:53(A) provides:

No person shall drive or move, nor cause or knowingly permit any vehicle owned or controlled by him to be driven or moved, on any highway of this state, at any time, any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment, in proper condition and adjustment, as required in this Chapter, or which is constructed or equipped in any manner in violation of this Chapter, and no person shall do any act forbidden or fail to perform any act required under this Chapter.
[3] In addition to this appeal, the State also filed a writ application in the Fifth Circuit Court of Appeal. The Fifth Circuit transferred the appeal (07-KA-0716) to this Court pursuant to La. Const. art. V, § 5(D), which gives this Court exclusive appellate jurisdiction in cases in which a statute or ordinance has been declared unconstitutional. The appeal and writ application have been consolidated in this Court.
[4] There have been previous failed attempts to challenge the constitutionality of the GNOEC cost. In December 2001, the GNOEC filed a petition for writ of mandamus against two First Parish Court judges, in an attempt to compel them to collect costs from certain traffic violators, as required by La. R.S. 32:57(G). The First Parish Court judges had refused to collect the GNOEC cost on grounds that the statute is unconstitutional. The district court denied the GNOEC's petition for mandamus, finding that the defendants had standing to question the constitutionality of the statute, and that the statute violated several provisions of the constitution. The GNOEC then appealed to this Court, challenging the standing of the defendants, and arguing that the district court erred by granting the petition for writ of mandamus and holding the statute unconstitutional. This Court held that the parish court judges, as parties to a mandamus proceeding which sought to compel them to collect the GNOEC cost, lacked the standing to challenge the constitutionality of the statute. This Court therefore vacated the district court's judgment without considering the merits of the constitutional issue. Greater New Orleans Expressway Commission v. Olivier, et al, 04-2147 (La. 1/19/05), 892 So.2d 570.
[5] La. C. Cr. P. art. 881.2(A) provides:

(1) The defendant may appeal or seek review of a sentence based on any ground asserted in a motion to reconsider sentence. The defendant also may seek review of a sentence which exceeds the maximum sentence authorized by the statute under which the defendant was convicted and any applicable statutory enhancement provisions.
(2) The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.
[6] La. C. Cr. P. art. 851 provides:

The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
[7] La. C. Cr. P. art. 532(1) provides:

A motion to quash may be based on one or more of the following grounds: (1) The indictment fails to charge an offense which is punishable under a valid statute.
[8] La. R.S. 13:1452.1 provides:

In any parish court having a traffic hearing officer, an appeal may be taken from any determination by the officer that a person is in violation of any traffic law or ordinance of the state, parish, or municipality within the court's jurisdiction. The appeal shall be taken to the judge of the parish court by filing a motion with the clerk of court for the parish along with payment of a reasonable fee not to exceed twenty-five dollars. The delay for filing an appeal shall be five days from the date of the determination by the traffic hearing officer. On appeal, the case shall be tried de novo.
[9] See: La.C.Cr.P. art. 3 ("Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.").
[10] La. C. Cr. P. art. 852 provides:

A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney.
[11] Louisiana District Court Rules, Rule 15.1 provides in part:

All motions, ex parte or otherwise, must be filed with the clerk of court and served on all opposing parties, except as otherwise provided by law. Service on the district attorney shall be accomplished by mailing a copy to the district attorney, unless the court has adopted an alternate method of service. Those courts that have adopted an alternative method of service on the district attorney are listed in Appendix 15.
[12] We also note that the attorney for the State admitted at oral argument that the improper service was not a main issue on which the State was relying.
[13] Although we are not solely relying on the provisions of these Guidelines, as they were promulgated after La. R.S. 32:57 was enacted, we find that they provide us with a tool to aid us in our decision in this case.