*1245
 
 CHARLES R. JONES, Judge.
 

 _JjThe appellant, Virtis Vincent, appeals his conviction and sentence for theft of used building components. We affirm.
 

 Vincent was charged with theft of used building components, a violation of La. R.S. 14:67.23. The district court denied the motion to suppress the evidence and found probable cause to hold Vincent for trial. Vincent, following a jury trial, was found guilty as charged.
 
 [1]
 
 The State filed a multiple bill of information to which Vincent entered a not guilty plea. He was sentenced to serve three years at hard labor with credit for time served and concurrent with any other sentences. The defense filed a motion for appeal which was granted. The hearing on the multiple bill was held, and Vincent was found to be a double offender. The district court vacated the prior sentence, and re-sentenced Vincent to five (5) years hard labor with credit for time served. Vincent timely filed this appeal.
 

 Garren Mims is the owner of a home located at 610 Thayer Street in Orleans Parish. Mr. Mims testified that on the morning of August 29, 2007, he arrived at |2610 Thayer St. to check on his home, which was under construction. Mr. Mims testified that he walked through the house towards the rear and looked out of a bedroom window. He further testified that he observed a black male — who was later identified as Vincent — in the back yard of the abandoned house adjacent to his home. The address of the abandoned home is 612 Thayer St. Mr. Mims testified that Vincent was rolling up and using a yellow rope to tie copper pipes, which were lying on the ground. Mr. Mims testified that he immediately called 911 to report the suspicious activity.
 

 Mr. Mims further testified that he then turned on the faucets in his home and discovered that he had no water. He testified that he went outside to see if the main water line had been shut off. Mr. Mims testified that he then looked under his house and he discovered that all of his copper plumbing pipes were missing all the way up to the shut off valve. He testified that he walked toward his backyard and observed Vincent walking toward the backyard at 612 Thayer St. where copper pipes were on the ground; he observed Vincent attempting to roll all of the copper pipes and tie them together. Mr. Mims testified that he again called 911 to report the theft of the pipes. He testified that he described Vincent as wearing a dark shirt and pants. He then asked Vincent what he was doing. Mr. Mims further testified that Vincent replied that he lived in the house next door. Mr. Mims testified that at this juncture he directed Vincent to knock on the door of 610 Thayer St. to prove that he lived there. Mr. Mims testified that the owner of the house denied that Vincent lived there. Mr. Mims testified that he called 911 a third time to see when the police would arrive. Mr. Mims testified that Vincent then attempted to leave the scene on a bicycle. Mr. Mims testified that he ordered Vincent not to |oleave and within five minutes officers from the New Orleans Police Department arrived.
 

 Mr. Mims testified that as Vincent rode a bicycle down a side yard, the police officers met Vincent at the front of the home and arrested him. Mr. Mims testi-
 
 *1246
 
 fíed that he spoke to the officers, and related to them what he had seen and showed them the missing pipes. Mr. Mims further testified that one of the officers took pictures of the copper pipes and a yellow electrical cord that Vincent used to tie the pipe. He testified that none of the other raised houses in the area had pipes missing. Mr. Mims testified that the pipes were not returned to him and that it costs him $4000.00 to replace the copper pipes.
 

 On cross-examination, Mr. Mims testified that he did not see Vincent cut the pipe, and that Vincent was not carrying any pipes when he was observed coming from Mr. Mims’ backyard. On re-direct examination, Mr. Mims testified that when he looked at the ends of the pipe it appeared to him that the pipe had been cut “... with snips or something like that.”
 

 Detective Aaron Cronk of the New Orleans Police Department testified that at approximately 8:15 a.m. he and his partner received a 911 dispatch that someone was stealing copper pipe from a home at 610 Thayer Street Det. Cronk testified that the suspect was described as a tall black male wearing a dark shirt and pants. Det. Cronk further testified that he and his partner drove to the nearest cross-street, Evelina Street. Det. Cronk further testified that he exited the police vehicle while his partner remained inside the vehicle in the event the suspect attempted to flee. Det. Cronk testified that he began walking southbound on Thayer St. As he passed some bushes growing next to the house at 610 Thayer St., he testified that he heard |4a conversation and observed the feet of two individuals standing between 610 and 612 Thayer St. At that point, Det. Cronk further testified that he saw Vincent, who fit the description of the suspect, run from the area; Det. Cronk apprehended him. Det. Cronk testified that he then spoke with the owner of the home, Garren Mims. Det. Cronk testified that he looked under Mr. Mims’ home and observed empty brackets where copper plumbing pipes had been installed. Det. Cronk further testified that he located a stack of missing copper pipes lying next to a shed in the back yard of 612 Thayer St.; the pipes were covered with a black plastic bag.
 

 On cross-examination, Det. Cronk testified that he did not see Vincent remove the pipes from under the house, and that Mr. Mims did not tell him that he (Mr. Mims) observed Vincent cut the pipes. He testified that he apprehended Vincent and arrested him within minutes after his arrival when he observed Vincent — who fit the description of the suspect — run from the scene. Det. Cronk testified that Vincent was not wearing gloves, and that he did not find any wire cutters, saws, hammers or any other tool in Vincent’s possession. Det. Cronk did testify that a bicycle was found at the scene. Lastly, Det. Cronk testified that he did not order the crime lab to test for fingerprints because the pipes were too covered with mud and grass for a test to be successful.
 

 Vincent raises two assignments of error on appeal: 1.) the district court erred in finding that the evidence presented was sufficient to support his conviction, and 2.) the district court made improper comments on the evidence, during closing arguments, after sustaining the State’s objection to defense counsel’s remarks about the failure to take fingerprint evidence from the pipes.
 

 |r,In his first assignment of error, Vincent asserts that the evidence was insufficient to support his conviction. Specifically, he argues that the State failed to prove that the pipes taken from 610 Thayer St. were valued at $500.00 or more. He asserts that the State only proved that
 
 *1247
 
 pipes of an undetermined amount were taken.
 

 In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Green,
 
 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.
 
 State v. Mussall,
 
 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The factfinder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
 
 Mussall,
 
 523 So.2d at 1309-1310. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.”
 
 State v. Smith,
 
 600 So.2d 1319, 1324 (La.1992).
 

 In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from | nwhich the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Shapiro,
 
 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from
 
 Jackson v. Virginia,
 
 but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt.
 
 State v. Wright,
 
 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard.
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987). If a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty.
 
 State v. Captville,
 
 448 So.2d 676 (La.1984).
 

 A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.
 
 State v. Huckabay,
 
 2000-1082, p. 33 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111
 
 (quoting State v. Harris,
 
 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435). A single witness, if believed by the trier of fact, is sufficient to support a conviction.
 
 See State v. White,
 
 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018.
 

 La.R.S. 14:67.23 provides in pertinent part:
 

 A. Theft of a used building component is the misappropriation or the taking of a used building component from immovable property belonging to another, either without the consent of the owner of the immovable property, or by means of fraudulent conduct, practices, or representations. An intent to deprive the owner of the immovable property permanently of the used building component is essential.
 

 |7B. “Used building component” shall mean any object produced shaped by human workmanship or tools that is an element of [a] structural
 
 *1248
 
 ... component ..., that is immovable property or fixture, including but not limited to ... plumbing ... parts of immovable property of any nature or kind whatsoever.
 

 C. (1) Whoever commits the crime of theft of a used building component, when the theft or taking amounts to a value or replacement value, whichever is greater, of five hundred dollars or more shall be fined not more than three thousand dollars, imprisoned with or without hard labor for not more than ten years, or both, (emphasis added).
 

 In the instant case, the victim — Mr. Mims — testified that all of the copper plumbing pipes had been installed on the house prior to the theft; that when he looked under the house he observed that all the copper pipes were missing up to the shut off valve, and that the replacement cost of the pipes was $4000.00. Furthermore, any rational trier of fact could conclude that the amount of copper pipes, shown in the photographs, constituted at least a portion of the copper pipes that were installed on Mr. Mims’ house. Mr. Mims observed Vincent walking from the back of his house to the stack of copper pipes lying in the backyard of the neighboring house where Vincent was attempting to roll and tie the pipes. Obviously, the jury concluded that Vincent took the pipes and that Mr. Mims’ testimony as to the replacement cost of the pipes was credible. While the actual replacement cost for the pipes shown in photographic exhibit number 5 may not be $4000.00, it was reasonable for the jury to conclude that the replacement value cost for the copper shown in photographic exhibit number 5 exceeded $500.00 No evidence disputes the jury’s conclusion. The State presented sufficient evidence to support Vincent’s conviction. This assignment of error is without merit.
 

 | sIn his second assignment of error, Vincent argues that the district court made improper comments on the evidence, during closing arguments, after sustaining the State’s objection to defense counsel’s remarks about the failure to take fingerprint evidence from the pipes.
 

 The following argument and exchange occurred:
 

 BY MR. DUFFY:
 

 But it’s also ridiculous that in the 21st century, the New Orleans Police Department may not have the capabilities to dust these things for fingerprints, even if they’re dirty. I mean, even if they are dirty, that’s even more reason that the fingerprints would be on them. Sherlock Holmes was doing it with a magnifying glass in the 19th century. I mean, we’re not talking about C.S.I. here, folks. But all we’re doing is putting some dust and taking tape. If he had gone over there and taken these pipes, his prints would be all over them.
 

 BY MR. BLAIR:
 

 Objection, Your Honor.
 

 BY THE COURT:
 

 Sustained, You’re commenting on facts that are not in evidence, and I instruct the ladies and gentlemen of the jury to disregard that remark about what could have been done in the 18th [sicjcentury, as not being part of the evidence in this case.
 

 Vincent did not object to these comments made by the district court; thus, he is precluded from raising this claim of error on appeal. La.C.Cr.P. article 841;
 
 State v. Lanclos,
 
 2007-0082, 2007-0716 (La.4/8/08), 980 So.2d 643. We pretermit further discussion of this assignment of error.
 

 | flLastly, a review of the record for errors patent reveals that none exist.
 

 
 *1249
 

 DECREE
 

 For the foregoing reasons, the conviction and sentence of Virtis Vincent are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The list of responsive verdicts to the theft charge given to the jury was technically incorrect under La. C. Cr. P. art. 814(26). However, because the jury returned a verdict of guilty of the crime charged, no prejudice resulted to the defendant. See
 
 State v. Pres-tridge,
 
 399 So.2d 564, 578 (La. 1981) (held, erroneous charge is not prejudicial when jury returns guilty verdict of crime charged).