0100-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/23/2015 8:49:52 AM
Accepted 4/23/2015 9:11:11 AM
ABEL ACOSTA
CLERK

NOS. PD-0100-15 & PD-0101-15

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

---

OSMIN PERAZA,
*Appellant*

**v.**

THE STATE OF TEXAS
*Appellee*

---

On Petition for Discretionary Review from the First Court of Appeals in
Nos. 01-12-00690-CR & 01-12-00691-CR.
Cause Numbers 1305439 & 1305438
from the 184th District Court of Harris County, Texas

---

**BRIEF FOR APPELLANT**

---

**Oral Argument Was Granted**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**JANI MASELLI WOOD**
Assistant Public Defender
Harris County, Texas
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

**Counsel for Appellant**
**Osmin Peraza**

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:       Osmin Peraza
             TDCJ-ID# 01798603
             Garza West
             4250 Highway 202
             Beeville, TX 78102

TRIAL PROSECUTOR:     Ms. Sarah Bruchmiller
             Assistant District Attorney
             Harris County, Texas
             1201 Franklin, 6th Floor
             Houston, Texas 77002

APPELLATE PROSECUTOR   Lisa McMinn (substituted in at CCA)
             State Prosecuting Attorney
             P.O. Box 13046, Capitol Station
             Austin, TX 78711

             Jessica Akins (at COA level)
             Assistant District Attorney
             Harris County, Texas
             1201 Franklin, 6th Floor
             Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:  Ms. Emily Detoto
             3000 Smith, Suite 4
             Houston, Texas 77006

PRESIDING JUDGE:     Hon. Jan Krocker
             184th District Court
             Harris County, Texas
             1201 Franklin, 17th floor
             Houston, Texas 77002

DEFENSE COUNSEL ON APPEAL: Jani Maselli Wood
             Harris County Ass't Public Defender
             1201 Franklin, 13th Floor
             Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State's Granted Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      Three parts to the theory that the DNA record fee is an unconstitutional
        tax. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      Court costs must be necessary and incidental to the trial of
                a criminal case to be legitimate . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        B.      An illegitimate court cost is actually a tax. . . . . . . . . . . . . . . . . . . 4
        C.      The separation of powers doctrine is violated when the
                courts act as tax-gatherers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     The State challenges every part of this court cost rationale. . . . . . . . . . . . . . 5

        A.      The State believes the holding of *Carson* is merely dicta. . . . . . . . . . . . . 5

                1.      The State's rationale fails because *Carson* is
                        binding precedent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
                2.      In *Carson*, the test for a court cost was
                        expressed in both the original opinion and the
                        opinion on rehearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
                3.      *Carson* is *not* essential to the determination of
                        this case. This Court has recently determined

a strikingly similar test for what a court cost is in *Weir v. State.* ........................... 9

    4.    Numerous cases would have to be disavowed under the State's theory that there is no test for a court cost in Texas. ........................... 9

    5.    The State's opinion that this Court should adopt a test from Oklahoma fails to consider appropriate precedent. ........................... 11

B.    An illegitimate court cost is a tax - according to the State's cited authority. ........................... 11

C.    A statute requiring the judicial branch to assess and collect taxes violates the separation of powers. ........................... 14

    1.    Texas state courts should not act as tax-gatherers. ........................... 14
    2.    The power to collect taxes is an executive branch function. ... 16

III..    The First Court of Appeals was correct under any test of a valid court cost. ........................... 17

A.    Under the *Carson* test, the DNA record fee is unconstitutional. ........................... 17

    1.    The State's argument that the Court of Appeals determination is "speculative" fails. ........................... 20

B.    Under the *Weir* test, the DNA record fee is unconstitutional. ........................... 20

C.    Under the *Claborn* test, the DNA record fee is unconstitutional. ........................... 21

IV.    Public Policy dictates that courts should collect only fees that support the courts. ........................... 22

V.    Conclusion ........................... 23

iii

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# INDEX OF AUTHORITIES

**Cases**:

*Armadillo Bail Bonds v. State*,
        802 S.W.2d 237 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

*Armstrong v. State*,
        340 S.W.3d 759 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

*Boykin v. State*,
        818 S.W.2d 782 (Tex. Crim. App.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Buback v. Romney*,
        156 N.W.2d 549 (Mich. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cantrell v. State*,
        10-12-00269-CR, 2014 WL 2069279
        (Tex. App.—Waco May 15, 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Coronel v. State*,
        416 S.W.3d 550 (Tex. App.—Dallas 2013, pet. ref'd) . . . . . . . . . . . . . . . . . . . 10

*Crocker v. Finley*,
        99 Ill. 2d 444, 459 N.E.2d 1346 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dallas County v. Sweitzer*,
        881 S.W.2d 757 (Tex. App.—Dallas 1994, writ denied). . . . . . . . . . . . . . . . . . 20

*Davila v. State*, 441 S.W.3d 751, 762
        (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . 10

*Drisker v. State*,
        03-13-00356-CR, 2014 WL 4063339
        (Tex. App.—Austin Aug. 14, 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Edwards v. State*,
    09-13-00360-CR, 2014 WL 1400747
        (Tex. App.—Beaumont Apr. 9, 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 10

*Ex parte Carson*,
    143 Tex. Crim. 498, 159 S.W.2d 126 (1942) . . . . . . . . . . . . . . . . . . . . . . passim

*Ex Parte Whiteside*,
    12 S.W.3d 819 (Tex. Crim. App.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Forbes v. Texas Dep't of Public Safety*,
    335 S.W.2d 439 (Tex. Civ. App. - Waco 1960, no writ) . . . . . . . . . . . . . . . . . 15

*Habib v. State*,
    431 S.W.3d 737 (Tex. App.—Amarillo 2014, pet. ref'd) . . . . . . . . . . . . . . . . 10

*Hill v. State*,
    440 S.W.3d 670 (Tex. App.—Tyler 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . 11

*Houston v. State*,
    410 S.W.3d 475 (Tex. App.—Fort Worth 2013, no pet.) . . . . . . . . . . . . . . . . 10

*Johnson v. State*,
    423 S.W.3d 385 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*LeCroy v. Hanlon*,
    713 S.W.2d 335 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Morrow v. Corbin*,
    122 Tex. 553, 62 S.W.2d 641 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Peraza v. State*,
    01-12-00690-CR, 2014 WL 7476214 (Tex. App.—Houston [1st Dist.]
    Dec. 30, 2014, pet. granted & pet. denied) . . . . . . . . . . . . . . . . . . . . . . . passim

*State v. Claborn*,
    870 P.2d 169 (Okla. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*State v. Lanchos*,
    980 So.2d 643 (La. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 14

*State v. Rhine*,
    297 S.W.3d 301 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . . . . . . . 14

*Weir v. State*,
    278 S.W.3d 364 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . passim

**Constitution, Statutes, and Other Resources**

TEX. CONST. ART. II, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. CONST., ART. IV, SEC. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. CONST., ART. IV, SEC. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. CRIM. PROC. ART. 102.020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

TEX. CODE CRIM. PROC. ART. 102.020(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. GOV'T CODE ANN. § 772.006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

TEX. PENAL CODE § 22.021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. TRANSP. CODE ANN. § 222.001(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Black's Law Dictionary (10th ed. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Carl Reynolds and Jeff Hall,
    2011-2012 Policy Paper *Courts are not Revenue Centers* . . . . . . . . . . . . . . . . . . 22

James W. McElhaney, *Great Arguments*,
    ABA Journal March 1, 2004. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

## STATEMENT OF THE CASE

This is an appeal from two separate cause numbers: 1305438 and 1305439. Mr. Peraza pled guilty to two different felony offenses of aggravated sexual assault of a child. (C.R.1 at 59; C.R.2 at 61). *See* TEX. PENAL CODE § 22.021. The Court took the plea under advisement and a PSI hearing was held. (C.R.1 at 144; C.R.2 at 146). At the PSI hearing, Mr. Peraza sought to withdraw his guilty plea, but the court denied the request. (2 R.R. at 6-9). After the presentation of witnesses, the court sentenced Mr. Peraza to 25 years imprisonment on each case to run consecutively. (C.R.1 at 73; C.R.2 at 75; 2 R.R. at 39).

Motions for new trial and motions in arrest of judgment were filed in both cases on August 13, 2012. (C.R.1 at 91, 116; C.R.2 at 94, 120). On August 16, 2012, the motions were presented and the court denied a hearing and denied the motions that same day. (C.R.1 at 113-15, 139-41; C.R.2 at 117-19, 143-45). Notices of appeal were timely filed. (C.R.1 at 78; C.R.2 at 80).

The First Court of Appeals rejected Mr. Peraza's claim that his pleas were involuntary. *Peraza v. State*, 01-12-00690-CR, 2014 WL 7476214, at *12 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, pet. granted & pet. denied). This Court denied Mr. Peraza's petitions for discretionary review on March 25, 2015 on this issue. The First Court of Appeals modified the judgments to delete the $250 DNA record fee from the judgments. *Peraza*, 2014 WL 7476214 at *12. The State petitioned for discretionary review and its petitions were granted on March 25, 2015 with an expedited briefing schedule.

1

## STATE'S GRANTED ISSUE

The First Court of Appeals erred by finding the DNA record fee is an unconstitutional tax that violates the separation of powers clause.

## STATEMENT OF FACTS

Mr. Peraza requested a bill of costs for both cases to review the assessed court costs. (C.R.1 at 83; C.R.2 at 86). The cost bills were prepared and filed with the district court subsequent to the judgment. (C.R.1 at 75; C.R.2 at 77). Mr. Peraza was charged $250 for a DNA Record Fee in each case. The Code of Criminal Procedure provides that a $250 fee can be collected upon conviction under TEX. CODE CRIM. PROC. ART. 102.020(a)(1). The Code further provides that the $250 Fee labeled "Costs Related to DNA Testing" will be distributed as follows:

> (d) Court costs under this article are collected in the same manner as other fines or costs. An officer collecting the costs shall keep separate records of the funds collected as costs under this article and shall deposit the funds in the county treasury.
> (e) The custodian of a county treasury shall:
> > (1) keep records of the amount of funds on deposit collected under this article; and
> > (2) send to the comptroller before the last day of the first month following each calendar quarter the funds collected under this article during the preceding quarter.
> (f) A county may retain 10 percent of the funds collected under this article by an officer of the county as a collection fee if the custodian of the county treasury complies with Subsection (e).
>
> * * * *
>
> (h) Except as provided by Subsection (h-1), the comptroller shall deposit 35 percent of the funds received under this article in the state treasury to the credit of the state highway fund and 65 percent of the funds received under this article to the credit of the criminal justice planning account in the general revenue fund.

TEX. CODE CRIM. PROC. ART. 102.020.

2

## SUMMARY OF THE ARGUMENT

The courts are not revenue sources. Neither are the courts tax gatherers for the state. Funds collected by the State should be necessary and incidental to the trial of a criminal case. The DNA record fee supports the state highways and the Governor's grant-funded criminal justice planning. It does not support the courts. Under the separation of powers clause, this Court should find the fee unconstitutional.

Ancillary to the DNA record fee - but paramount in the determination - is what is the test for a court cost in Texas? This Court should reject the State's assertion that *Ex parte Carson* and *Weir v. State* and its progeny should be disavowed in order to create a new test relying upon law from Oklahoma.

The First Court of Appeals properly held that the DNA record fee is an unconstitutional tax that violates the separation of powers clause.

The First Court of Appeals determined that the $250 DNA record fee was an unconstitutional tax, explaining "the revenue, by statute, is dedicated by law for expenditures that are far removed from actual 'court costs.' A plain reading of the pertinent statutes reveals this undeniable fact." *Peraza*, 2014 WL 7476214, at *12.

## I. Three parts to the theory that the DNA record fee is an unconstitutional tax.

The State claims the Court of Appeals erred in finding the DNA record fee is an unconstitutional tax that violates the separation of powers clause. (State's brief at 2). In order to evaluate the State's argument, one must first understand the general rationale supporting the idea that certain criminal court costs are unconstitutional. This rationale has three parts.

### A. Court costs must be necessary and incidental to the trial of a criminal case to be legitimate.

Part One concerns the legitimacy of a court cost. This Court has said a court cost is legitimate only if it funds services necessary or incidental to the trial of a criminal case. *Ex parte Carson*, 143 Tex. Crim. 498, 159 S.W.2d 126, 130 (1942).

### B. An illegitimate court cost is actually a tax.

Part Two is the principle that an illegitimate court cost is not a court cost at all, but is in reality a tax. If a court cost's purpose is to raise revenue instead of to recoup the costs of judicial resources, then the cost is a tax. *State v. Lanchos*, 980 So.2d 643,

653 (La. 2008). The fact that an assessment is labeled as a court cost is of no consequence. *Id.*

## C. The separation of powers doctrine is violated when the courts act as tax-gatherers.

Part Three is pure separation-of-powers doctrine. The doctrine is violated when one of the three branches of Texas government is delegated a power more appropriately attached to another branch. *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990). A statute imposing an executive branch power on the judicial branch would violate the separation of powers doctrine and be unconstitutional. The power to collect taxes is a function of the executive branch - not the judicial branch. Therefore, a statute requiring the judicial branch to assess and collect taxes - albeit taxes disguised as court costs - violates the separation of powers. The constitutionality of any criminal court cost can be evaluated under the foregoing three-part rationale.

## II. The State challenges every part of this court cost rationale.

The State argues that the DNA record fee is not an unconstitutional tax that violates the separation of powers clause of the Texas Constitution. (State's Brief at 2). The State's argument attacks all three parts of the general rationale for certain court costs being unconstitutional. All their contentions are meritless.

## A. The State believes the holding of *Carson* is merely dicta.

As noted earlier, Part One of the general rationale concerns the legitimacy of a court cost. The State takes issue with the test employed by the Court of Appeals in determining that the DNA record fee is not a legitimate cost. The Court of Appeals

5

employed the test set out by this Court in *Ex parte Carson*, 159 S.W.2d at 130. The test is that a court cost is legitimate only if it funds services necessary or incidental to the trial of a criminal case. *Id.*

The State avers that the *Carson* test should not be utilized because the test is not an actual holding of this Court, but rather is dicta. (State's Brief at 10-11). The State then urges this Court to "disavow" the test. (State's brief at 11). The State then suggests this Court "need not replace the language of *Ex parte Carson* with some other test to evaluate the propriety of costs." *Id.* If, however, this Court does choose to impose a test, the State suggests using a much more lenient test from the State of Oklahoma. *Id.* The Oklahoma test is that a court cost is legitimate if it is "reasonably related to the costs of administering the criminal justice system." *Id.* (*citing State v. Claborn*, 870 P.2d 169 (Okla. Crim. App. 1994)). The State accurately notes that under the Oklahoma test, a cost would not need to "be limited to compensating the judiciary." (State's Brief at 11).

### 1. The State's rationale fails because *Carson* is binding precedent.

Faced with a court cost that fails the test for legitimacy, the State advances a familiar pattern of argument similar to the law school example about the farmer's cabbages being eaten by a goat:

You had no cabbages.

If you had any cabbages, they were not eaten.

If your cabbages were eaten, it was not by a goat.

If your cabbages were eaten by a goat, it wasn't my goat.

And if it was my goat, he was insane!

6

James W. McElhaney, *Great Arguments*, ABA Journal March 1, 2004. (http://www.abajournal.com/magazine/article/great_arguments).

The State's argument on appeal follows this pattern:

Attack the test standard.

Assert that there should not even be a test standard.

And if a test is necessary, the standards should be greatly relaxed.

And even under a greatly relaxed standard, anything named a "court cost" is valid.

**2.      In *Carson*, the test for a court cost was expressed in both the original opinion and the opinion on rehearing.**

First, the State argues that the *Carson* test for evaluating a court cost's legitimacy is not actually the test.  In essence, the State asserts that this Court did not mean what it said in *Carson* because it is in conflict with the result the State seeks.

In *Carson*, this Court invalidated a $1.00 court cost in Harris and Dallas Counties to support county law libraries used by attorneys and judges.  This Court explained its rationale at some length:

> On one side the courts take the view that the cost may be taxed as a proper item because the money is used in the establishment and maintenance of a law library, which, it is stated, is a legitimate charge on the litigants.  We find ourselves unable to accept that view.  Such reasoning would lead into fields of expenditures which may well include the cost of the courthouses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride.  If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend.  Many other illustrations might be used to show the fallacy of such contention and the inevitable results that litigation in the courts would be

7

prohibitive. We, therefore, conclude, as several states have, that the tax imposed by the bill is not and cannot be logically considered a proper item of cost in litigation, particularly in criminal cases.

*Carson*, 159 S.W.2d at 127.

This Court went on to say that it "also concluded" the statute authorizing the fee was an unconstitutional local law. *Id.* at 127-28. Later in the opinion, this Court declared that the $1.00 court cost also violated the constitutional guarantee of equal protection. *Id.* at 129-30. There were three listed reasons for this Court's invalidation of the $1.00 law library court cost. On rehearing, this Court reiterated the first two of these reasons, explaining:

> We remain firmly convinced: (a) That the item of $1.00 taxed as costs for the Law Library Fund is neither necessary nor incidental to the trial of a criminal case, and that it is not a legitimate item to be so taxed, (b) that to so tax against a defendant in a criminal case in Harris County, and not tax it in other counties where a defendant was convicted of the same offense would be a discrimination which the law does not recognize or tolerate.

*Id.* at 130.

The idea that the $1.00 court cost was invalid because it was not necessary or incidental to the trial of a criminal case was expressed twice. The idea was expressed in both the original opinion and the opinion on rehearing. The fact that this idea was expressed twice, weakens the State's argument that the *Carson* test for a cost's validity is not an actual holding. This fact also runs counter to the State's suggestion that the *Carson* test is merely a "hypothesis" borne out of "disdain for [the] fee." (State's Brief at 10).

8

3. *Carson* is *not* essential to the determination of this case. This Court has recently determined a strikingly similar test for what a court cost is in *Weir v. State*.

The State urges this Court to disavow the *Carson* test. *Id.* at 11. The State then suggests that there need be no test at all. *Id.* ("The Court need not replace the language of *Ex parte Carson* with some other test to evaluate the propriety of costs or fees.")(State's brief at 11). This suggestion implies that if this Court disavows the *Carson* test, no other Texas law speaks to the propriety of court costs. *See id.* ("E*x parte Carson* is essential to Appellant's argument, because without its 'incidental or necessary to a criminal trial' test, the cost in this case is not a 'tax,' courts do not become 'tax collectors,' and the statute creating this scheme does not violate the separation of powers clause."). The State's implication, however, is inaccurate. This Court has announced alternative formulations of the *Carson* test on multiple occasions in recent years. So even if this Court disavows the *Carson* test, this Court's alternative formulations of the test will still stand. Contrary to the State's confident declaration, the *Carson* test is not "essential to Appellant's argument." This Court would have to disavow numerous declarations in multiple recent cases before Texas would have no test to evaluate the propriety of court costs.

4. **Numerous cases would have to be disavowed under the State's theory that there is no test for a court cost in Texas**.

The first case would be *Weir v. State*, where Judge Hervey wrote for a unanimous court:

> **We also agree with the State** that Section 102.021(1) of the Texas Government Code, authorizing an assessment of **court costs** against convicted defendants, was intended by the Legislature as a nonpunitive

9

**"recoupment of the costs of judicial resources expended in connection with the trial of the case."** (emphases added)

*Weir v. State*, 278 S.W.3d 364, 365-66 (Tex. Crim. App. 2009). What is especially intriguing about *Weir*, is that this Court adopted wholesale the State's proffered definition of what a court cost should be. And that definition is not significantly at odds with *Carson*.

In another unanimous decision, this Court reaffirmed *Weir*:

Instead, *court costs are compensatory in nature*; that is, they are "a nonpunitive **recoupment of the costs of judicial resources expended in connection with the trial** of the case." *Id.* at 366 (quotations omitted).(emphases added)

*Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011).

And again in *Johnson v. State*, this Court unanimously explained:

However, court costs are not part of the guilt or sentence of a criminal defendant, nor must they be proven at trial; rather, they are "a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *See Armstrong*, 340 S.W.3d at 767 (*quoting Weir*, 278 S.W.3d at 366-67).

*Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014).

All three of these cases have been relied upon repeatedly by the lower courts of appeals: *See e.g., Davila v. State*, 441 S.W.3d 751, 762 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)*; Houston v. State*, 410 S.W.3d 475, 477 (Tex. App.—Fort Worth 2013, no pet.); *Drisker v. State*, 03-13-00356-CR, 2014 WL 4063339, at *1 (Tex. App.—Austin Aug. 14, 2014, no pet.); *Coronel v. State*, 416 S.W.3d 550, 556 (Tex. App.—Dallas 2013, pet. ref'd); *Habib v. State*, 431 S.W.3d 737, 743 (Tex. App.—Amarillo 2014, pet. ref'd); *Edwards v. State*, 09-13-00360-CR, 2014 WL 1400747, at *3 (Tex. App.—Beaumont Apr. 9, 2014, no pet.) *Cantrell v. State*,

10-12-00269-CR, 2014 WL 2069279, at *5 (Tex. App.—Waco May 15, 2014, no pet.); *Hill v. State*, 440 S.W.3d 670, 674 (Tex. App.—Tyler 2012, no pet.). (List not exhaustive).

**5.  The State's opinion that this Court should adopt a test from Oklahoma fails to consider appropriate precedent.**

The State's suggestion that this Court adopt the Oklahoma test for criminal court cost validity assumes the absence of an existing test here in Texas. As explained above, this Court would have to disavow its statements in many more cases than *Carson* before there would be no Texas test.

**B.  An illegitimate court cost is a tax - according to the State's cited authority.**

Part Two of the rationale is that an illegitimate court cost is not a court cost at all, but is in reality a tax. The State takes issue with this idea, calling it "highly tenuous and mostly semantic." (State's Brief at 12).

The State refuses to recognize that a court cost deemed to be invalid - no matter what the test for invalidity - is essentially a tax. **All four cases the State cites as support for its argument actually refer to an improper court cost or filing fee as a tax**. (See State's Brief at 12-13):

1.  *Carson*, 159 S.W.2d at 127(reasoning that "the **tax** imposed by the bill is not and cannot be logically considered a proper item of cost in litigation, particularly in criminal cases);

2.  *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986)(the $40 **tax** allocated to state general revenues...);

3.  *State v. Claborn*, 1994 OK CR 8, 870 P.2d 169, 171 (Okla. Crim. App. 1994)(holding that "as long as a criminal statutory assessment is reasonably related to the costs of administering the criminal justice

11

system, its imposition will not render the courts '**tax gatherers**' in violation of the separation of powers doctrine);

4. *Crocker v. Finley*, 99 Ill. 2d 444, 452, 459 N.E.2d 1346, 1349 (1984)(holding "[t]he $5 charge at issue, referred to by statute as a fee, is in reality a **tax**).

The first of the four cases cited by the State is *LeCroy v. Hanlon*, 713 S.W.2d 335 (Tex. 1986). At issue in *LeCroy* was a statute requiring district clerks to collect a $75.00 filing fee in a civil case. The county was to retain $35.00 and send the remaining $40.00 to the State Comptroller for deposit in the State's General Revenue Fund. The Texas Supreme Court described the problem with the $40 portion of the filing fee as follows:

> The major defect with the filing fee is that it is a general revenue tax on the right to litigate: the money goes to other statewide programs besides the judiciary. Nearly all states with similar open courts provisions have held that filing fees that go to fund general welfare programs, and not court-related services, are unconstitutional.

*Id.* at 342 [footnote omitted].

*LeCroy* is a civil case involving a filing fee instead of a criminal case involving a criminal court cost and the constitutional provision at issue is the Texas Open Courts Provision instead of the separation of powers clause. But the Supreme Court's conclusion is relevant in cases that challenge criminal court costs. When a court cost goes to statewide programs other than the judiciary, the cost is a general revenue tax. *Id.* This is not semantics; it's the law.

Another of the four cases cited by the State is *State v. Claborn*, 870 P.2d 169 (Okla. Crim. App. 1994). (State's Brief at 13). The State had this to say about Claborn:

> But in *Claborn*, the Oklahoma Court of Criminal Appeals addressed the viability of a prior opinion that held a court cost was a tax

12

if it did not "bear a true relation" to the expenses of the prosecution at hand. 870 P.2d at 171. It noted that this holding was unsupported by statutes or case law, and other jurisdictions have "adopted a more relaxed standard."

(State's Brief at 13).

Nothing in the literal wording of the State's comments about *Claborn* is inaccurate. But the State's citation of *Claborn* in support of its contention that an invalid court cost is not a tax is at least misguided. The State's comments about *Claborn* are intended to suggest that the Oklahoma Court of Criminal Appeals said an invalid court cost is not a tax. This is not the case at all.

The *Claborn* Court never said an invalid court cost is not a tax. Rather, the Court disagreed with its previous opinion invalidating a fee that did not bear a true relation to the expenses of the particular prosecution. *Claborn v. State*, 870 P.2d at 171. The *Claborn* Court felt the test for determining the validity of a criminal court cost should be broader. Never did the *Claborn* Court disagree with the idea that an invalid criminal constitutes a tax. This is clear from the Oklahoma Court of Criminal Appeals' holding in *Claborn*:

> Today we reject the rigid standard adopted in *Coffelt*. It is, of course, incumbent on this Court and the judicial branch in general to carefully preserve and protect the separate powers assigned to each of the three branches of government by our constitution. With this in mind, we hold that as long as a criminal statutory assessment is reasonably related to the costs of administering the criminal justice system, its imposition will not render the courts "tax gatherers" in violation of the separation of powers doctrine.

*Id.* ("The various assessments are reasonably related to the costs of administering the criminal justice system and are not simply an executive branch 'tax.'").

13

**C.** **A statute requiring the judicial branch to assess and collect taxes violates the separation of powers.**

Part Three of the rationale is that the power to collect taxes is a function of the executive branch - not the judicial branch. Thus, a statute requiring the judicial branch to assess and collect taxes - albeit taxes disguised as court costs - violates the separation of powers.

The State does not accept this argument. The State contends that even if the cost is a tax, the assessment of the cost by the courts does not make them tax collectors. (State's Brief at 13). If courts are tax collectors, the State says, then business owners who charge sales taxes and forward them to the comptroller are also tax collectors. *Id.*

Further, the State argues that delegations of authority to one branch of government that are more properly attached to another branch are not always unconstitutional. *Id.* at 14. The State finds support for this argument on this Court's opinion in *State v. Rhine*, 297 S.W.3d 301, 305 (Tex. Crim. App. 2009). The State says that whether such a delegation is unconstitutional "is essentially a matter of degree." (State's Brief at 14).

**1.** **Texas state courts should not act as tax-gatherers.**

Statutes requiring courts to assess court costs that are actually taxes render the courts "tax gatherers" in violation of the separation of powers doctrine. *State v. Lanchos*, 980 So.2d 643, 654 (La. 2008). Even the Oklahoma case oft-cited by the State to support its various arguments acknowledges this truth. *State v. Claborn*, 870 P.2d 169, 171 (Okla. Crim. App. 1994) ("court cost not reasonably related to costs of

14

administering criminal justice system renders courts 'tax gatherers' in violation of separation of powers").

The State's argument in opposition to these cases contains no cases saying otherwise. The *Rhine* case does not hold to the contrary. Apparently, no cases hold to the contrary.

The State's assertion that courts cannot be tax collectors because retailers who collect taxes would then have to be tax collectors is of no moment. Retailers do serve as tax collectors of sorts. But by collecting sales taxes and remitting them to the State Comptroller, retailers do not perform a duty belonging to another branch of government. Retailers are not a branch of government. If anything, retailers serve as agents of the executive branch of government. The courts, on the other hand, are part of the judicial system:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. ART. II, § 1. This provision is violated when one branch of government is delegated a power that is more appropriately attached to another branch. *Armadillo Bail Bonds v. State*, 802 S.W.2d at 239. Thus, a statute imposing upon the judicial branch a power of government belonging to the executive branch would violate the doctrine of separation of powers.[1]

---

[1] *See Forbes v. Texas Dep't of Public Safety*, 335 S.W.2d 439, 442-43 (Tex. Civ. App. - Waco 1960, no writ) (separation of powers provision applies to statutes involving exercise by the courts of non-judicial powers); *Accord Buback v. Romney*, 156 N.W.2d 549, 558

15

**2.      The Power to Collect Taxes is an Executive Branch Function.**

The Comptroller of Public Accounts is one of six officers constituting the executive department of the State of Texas. TEX. CONST., ART. IV, SEC. 1. The Comptroller is to perform such duties as may be required by law. TEX. CONST., ART. IV, SEC. 23. As stated in the Comptroller's "Agency Strategic Plan" for 2011-2015, the Comptroller serves as "Texas' chief tax collector" and "collects taxes and fee owed to the state."[2] Chapter 403 of the Government Code sets out many of the Comptroller's duties in this regard. Because the Comptroller is an executive branch officer, the power to collect taxes resides in the executive branch of state government.

Unlike the executive branch, the judicial branch is not empowered to collect taxes. Rather, the judicial branch is charged with exercising the "judicial power" of the state which has been defined by the Texas Supreme Court as follows:

> Judicial power is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for a decision.

*Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641, 644 (1933). Nothing in the definition of judicial power suggests that courts have the power to collect taxes.

The courts are not agents of the executive branch. When the courts collect taxes, they usurp the duty of the executive branch to collect taxes. This is a violation of the separation of powers doctrine.

---

(Mich. 1968) (Michigan Supreme Court struck down statute imposing executive branch functions on the judicial branch).

[2]      Agency Strategic Plan 201-2015, Susan Combs Texas Comptroller of Public Accounts, page 7. The strategic plan can be accessed online at: http://www.cpa.state.tx.us/taxbud/strategic/96-361-10.pdf.

**III. The First Court of Appeals was correct under any test of a valid court cost.**

The State believes the *Carson* test is invalid. Mr. Peraza believes it is binding precedent upon this court and the DNA fee is unconstitutional under that test.

The State further averred that without *Carson*, there is no test in Texas. (State's brief at 11). Actually, there is a test under *Weir and Armstrong*. The Court's determination in *Weir* is very similar to *Carson* and the DNA record fee fails under that test.

The State would like this Court to overrule *Carson* and *Weir* and *Armstrong* to craft a new rule based upon an Oklahoma case, *Claborn*. Even if this Court were to do that, the DNA record fee still fails.

**A. Under the *Carson* test, the DNA record fee is unconstitutional.**

In *Carson*, this Court held that a $1 law library court cost fee "constituted an unconstitutional tax, not a legitimate court cost, because it was "neither necessary nor incidental to the trial of a criminal case." *Peraza*, 2014 WL 7476214, at *5.

The First Court of Appeals explained why the DNA record fee failed under *Carson* "[a]nd the revenue collected via the 'DNA Record Fee' to be used by DPS for anything covered by chapter 411, subchapter G, or for crime laboratory accreditation under Government Code section 411.0205, is not closely enough related to appellant's criminal trial to be considered constitutional":

> The court in *Carson*, which constitutes binding precedent on this Court, held that fees which are "neither necessary nor incidental to the trial of a criminal case" are not legitimate courts costs that may be assessed against a defendant. 159 S.W.2d at 127, 130. As discussed above, the responsibilities of TxDOT, which under the Code of Criminal Procedure is entitled to use thirty-five percent of the revenue collected by the

17

"DNA Record Fee," **do not relate to the trial of a criminal case**. Instead, the responsibilities of TxDOT **are far more remote from a criminal trial than the county law libraries** which were to be used by the judges and attorneys for trial preparation in Carson. Thus, it cannot be reasonably concluded that the portion of the revenue collected through the "DNA Record Fee" and dedicated to the state highway fund constitutes a proper court cost to be assessed against appellant or any other criminal defendant.

*Peraza*, 2014 WL 7476214, at *7-8

And as for the sixty-five percent dedicated to the criminal justice planning account - the Court of Appeals aptly explained how the money, from the general revenue fund, provides grants to a host of programs entirely unrelated to the trial of a criminal case:

> Moreover, the CJD has awarded money from the fund to a variety of recipients, such as the **Alamo Area Council of Governments for Regional Police Training Academy, the Bastrop County Women's Shelter for SAINT: Sexual Assault Integrated Nursing Team, Fort Bend County for the "Saved by the Bell" Delinquency Reduction Program, the Katy Christian Ministries for Counseling Services for Victims of Domestic Violence, and The Family Place for S.T.A.R.T.** (Students Tackling Abusive Relationships Together). See, e.g., Press Release, Office of Governor Tex., Gov. Perry Awards $8 Million in Grants to Improve Criminal Justice Systems (Sept. 10, 2008), http:// governor.state.tx.us/news/press-release/11114/ (listing seventy-nine recipients that received more than $8 million in grants from criminal justice planning fund); Press Release, Office of the Governor of Tex., Gov. Perry Awards $195,000 From State Criminal Justice Planning Fund, supra (stating more than $195,000 in grants from criminal justice planning fund awarded to Wood County for Wood County Rural Prosecutor Project and Beyond Missing Inc. for Texas Amber Alert Network); Press Release, Office of Governor, Governor Rick Perry Announces Statewide Grant to Reduce School Dropouts (Nov. 7, 2001), http:// governor.state.tx.us/ news/press-release/4229/ (announcing $168,146 criminal justice planning fund grant to **Behavioral Health Institute of Waco to assist with "efforts to reduce school failure, dropout rates, and juvenile crime"**); see also Helpful Questions and Answers for Managing Grants, supra, at B–12 (**listing activities eligible for grants from criminal justice planning fund, such as job training, professional therapy and counseling, school based**

18

**delinquency prevention, substance abuse, and peer support groups**).(emphases supplied)

*Peraza*, 2014 WL 7476214, at *10.

Additionally, the State contends that the Court of Appeals' determination that past grant recipients were "unworthy of court cost financing" is a "complaint directed, not at the statute, but at the grant award practices of the criminal justice division of the Governor's Office." (State's brief at 10). The problem is with the statute - it is exceedingly broad and written without any concern of supporting the courts that collected the fee:

> (a) The governor shall establish a criminal justice division in the governor's office to:
> > (1) advise and assist the governor in developing policies, plans, programs, and proposed legislation for improving the coordination, administration, and effectiveness of the criminal justice system;
> > (2) administer the criminal justice planning fund;
> > (3) prepare a state comprehensive criminal justice plan, to update the plan annually based on an analysis of the state's criminal justice problems and needs, and to encourage identical or substantially similar local and regional comprehensive criminal justice planning efforts;
> > (4) establish goals, priorities, and standards for programs and projects to improve the administration of justice and the efficiency of law enforcement, the judicial system, prosecution, criminal defense, and adult and juvenile corrections and rehabilitation;
> > (5) award grants to state agencies, units of local government, school districts, and private, nonprofit corporations from the criminal justice planning fund for programs and projects on consideration of the goals, priorities, and standards recommended by the Criminal Justice Policy Council;

TEX. GOV'T CODE ANN. § 772.006. The intimation that perhaps the Governor's office was dispensing grants not according to the statute is without authority.

19

1. **The State's argument that the Court of Appeals determination is "speculative" fails**. (State Brief at 8).

The State believes the Court of Appeals "speculated" when detailing what the *statute* says the money is used for. (State brief at 8). The Court of Appeals relied upon the plain language of the statute as to what the DNA record fee supports. *See Peraza*, 2014 WL 7476214, at *5. When discerning the meaning of a statute, the reviewing court should start its analysis by looking at the plain language of the statute in question. *Ex Parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App.2000). If the statute is clear and unambiguous, the plain meaning of its words should be applied. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App.1991).

Additionally, the plain language of the statute dictates that the collected money go into the general revenue fund. *Peraza*, 2014 WL 7476214, at *5, 8. The depositing of a court fee in the general revenue fund is sufficient to find the fee unconstitutional:

> Charging litigants who can pay a reasonable fee for judicial support services does not violate the open courts provision. Filing fees and court costs are usually constitutional. *LeCroy v. Hanlon*, 713 S.W.2d 335, 342 (Tex.1986). However, a filing fee deposited in the state's general revenue fund is an arbitrary and unreasonable interference with a litigant's right of access to the courts. **It is unreasonable and arbitrary because it is a general revenue tax** on the right to litigate. *LeCroy*, 713 S.W.2d at 341. The money collected can go to programs other than the judiciary. *LeCroy*, 713 S.W.2d at 341. **It is immaterial that the State spends money from the general revenue fund on the judiciary**. *See LeCroy*, 713 S.W.2d at 342. (Emphases added).

*Dallas County v. Sweitzer*, 881 S.W.2d 757, 765 (Tex. App.—Dallas 1994, writ denied).

**B.    Under the *Weir* test, the DNA record fee is unconstitutional.**

In *Weir*, this Court  (wholly adopting the State's argument) held:

We also agree with the State that Section 102.021(1) of the Texas Government Code, authorizing an assessment of court costs against

20

convicted defendants, was intended by the Legislature as a nonpunitive "recoupment of the costs of judicial resources expended in connection with the trial of the case."

*Weir*, 278 S.W.3d at 365-66. The "costs of judicial resources expended in connection with the trial of a case" does not include funding the State highway system or the Governor's Criminal Justice Planning Fund. Recoupment is defined as "[t]he getting back or regaining of something, esp. expenses." *Recoupment*, Black's Law Dictionary (10th ed. 2014). A resource is the money that might be deployed in a given circumstance." *Resource*, Black's Law Dictionary (10th ed. 2014). The *Weir* test envisions the courts getting back money used with the trial of the case.

As explained *supra*, the DNA record fee was neither written nor apparently envisioned to return money to the courts as recoupment. Under the *Weir* test, this fee fails as a constitutionally valid court cost.

**C.    Under the *Claborn* test, the DNA record fee is unconstitutional.**

The State has a different theory than what was offered and accepted by this Court in *Weir*. Now, the State would prefer a more relaxed standard, if any, that a court cost "need only be 'reasonably related to the costs of administering the criminal justice system.'" (State's brief at 11, *citing Claborn*, 870 P.2d at 171). However, even the "reasonably related" standard, the DNA record fee fails. The state highway fund is not reasonably related. The Court of Appeals detailed explanation of the way funds are statutorily utilized are wholly unrelated to the criminal justice system where the funds:

> may be used only: (1) to improve the state highway system; (2) to mitigate adverse environmental effects that result directly from construction or maintenance of a state highway by the department; or (3)

21

by the Department of Public Safety to police the state highway system and to administer state laws relating to traffic and safety on public roads." TEX. TRANSP. CODE ANN. § 222.001(a) (Vernon 2011).

*Peraza*, 2014 WL 7476214, at *5. The Criminal Justice planning committee in theory would seem to support the courts, but the statute is so broad that in effect, it fails to do that. Advising the "governor in developing policies, plans, programs, and proposed legislation for improving the coordination, administration, and effectiveness of the criminal justice system" is not reasonably related to the criminal justice system. TEX. GOV'T CODE ANN. § 772.006 (a)(1).

## IV. Public Policy dictates that courts should collect only fees that support the courts.

> [C]lerks of court should not be made tax collectors for our state, nor should the threshold to our justice system be used as a toll booth to collect money for random programs created by the legislature. - Supreme Court of Louisiana

Carl Reynolds and Jeff Hall, 2011-2012 Policy Paper *Courts are not Revenue Centers*, p. 4. http://cosca.ncsc.org/~/media/Microsites/Files/COSCA/Policy%20Papers/Courts AreNotRevenueCenters-Final.ashx. (last visited April 22, 2015).[3]

The report is must reading for anyone working in the court system to get a broad understanding of the depth and breadth of the issues in "court costs." The proposed principles set out by Mr. Reynolds and Mr. Hall would result in a better court system and a fairer one for defendants, in general:

> The proliferation of these fees and costs as chargeable fees and costs included in the judgment and sentence issued as part of the legal financial obligation of the defendant has recast the role of the court as a collection agency for executive branch services.

---

[3] Carl Reynolds is the former administrative director of the Texas Office of Court Administration.

22

*Id.*, at p. 9. That is exactly what is happening here in Texas.

For example, in 2010 numbers are publicly available contrasting State revenue from court costs and filing fees with State judicial branch expenditures. The State realized $431,793,084 from criminal court costs and civil filing fees.[4] But the Legislature budgeted only $335,128,621 for the judicial branch.[5]

Thus, the State took in nearly $100 million more from the court system than the State spent on the courts ($431,793,084 - $335,128,621 = $96,664,463). Money collected from the court system and directed to programs outside the judiciary does not come back to the courts. Rather, the courts are used as a profit center to fund general government programs. In other words, criminal defendants and civil lawsuit filers pay not only to support the courts, but also to fund general government programs. This practice violates the principle of separation of powers and is therefore unconstitutional.

## V. Conclusion

The DNA record fee is not for DNA testing. The statutes make clear that this money is collected for the general revenue fund. The State closes its brief by declaring that "[h]aving been convicted of a crime, Appellant must share in those costs." (State's brief at 15). Yes - having been convicted of a crime, Mr. Peraza should rightfully pay costs necessary or incidental to his trial or to recoup the costs of his

---

[4] http://www.lbb.state.tx.us/Other_Pubs/Financing%20the%20Judiciary%20in%20Texas%20Legislative%20Primer%202011.pdf

[5] http://www.lbb.state.tx.us/GAA/General_Appropriations_Act_2010-11.pdf page IV-45.

criminal trial. He should not pay for highway funding or grant funded programs wholly unrelated to the trial of a criminal case.

PRAYER

Mr. Peraza prays this Court affirm the modification of judgments and find that the DNA record fee is unconstitutional.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*/s/ Jani J. Maselli Wood*
_____
**JANI J. MASELLI WOOD**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
Jani.Maselli@pdo.hctx.net
(713) 368-0016
(713) 368-4322
TBA No. 00791195

24

**CERTIFICATE OF SERVICE**

Pursuant to Tex. R. App. Proc. 9.5, this certifies that on April 23, 2015, a copy of the foregoing was served electronically to counsel for the state (through texfile.com) at the following address:

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046,
Austin, TX 78711
information@spa.texas.gov

/s/ *Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this petition complies with the type-volume limitations of *Tex. R. App. Proc. 9.4(i)(2)(D)*.

1.      Exclusive of the portions exempted by *Tex. R. App. Proc. 9.4 (i)(1)*, this petition contains 6796 words printed in a proportionally spaced typeface.

2.      This petition is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 14 point font in footnotes produced by Corel WordPerfect software.

3.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*/s/ Jani Maselli Wood*

_____
JANI J. MASELLI WOOD